James W. Keeley, Jr., Petitioner *v.* Commonwealth of Pennsylvania, State Real Estate Commission, Respondent.

Argued September 9, 1985, before Judges ROGERS and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

William J. C. O'Donnell, O'Donnell Law Offices, for petitioner.

Jerome Grossi, Counsel for State Real Estate Commission, with him, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, and David F. Phifer, Chief Counsel, Department of State.

OPINION BY SENIOR JUDGE BARBIERI, December 4, 1985:

James W. Keeley, Jr., petitions for review of an order of the State Real Estate Commission (Commission) which denied his petition for reinstatement of his real estate broker's license. That broker's license was previously revoked by the Commission for violations of the Real Estate Licensing and Registration

Act (Act), Act of February 19, 1980, P.L. 15, as amended, 63 P.S. §§455.101-455.902. We affirm.

The following facts are pertinent. Keeley had formerly been issued a real estate broker's license by the Commission. Following a hearing, the Commission issued an adjudication on September 20, 1982 in which it found that he had violated Sections 604(1), (2), (15) & (20) of the Act, 63 P.S. §§455.604(1), (2), (15) & (20), by having violated escrow obligations; engaged in conduct which demonstrated bad faith, dishonesty and untrustworthiness; and made substantial misrepresentations and false promises in order to induce a person to enter into a contract. As part of that adjudication, the Commission revoked Keeley's broker's license as well as the license held by a corporation for which he was the broker of record. No appeal was ever taken from the Commission's September 20, 1982 adjudication. On April 9, 1984, Keeley filed a petition with the Commission seeking the reinstatement of his broker's license. In that petition, he averred that he had rehabilitated himself, had repaid the losses occasioned by his violation of his escrow obligation, and was now suitable for licensure as a real estate broker. The Commission did not hold any hearings on Keeley's petition, nor did it take any evidence but proceeded to issue an order on June 20, 1984 which denied his petition. A timely appeal to this Court followed.

In this appeal, Keeley contends that (1) the Commission violated his procedural due process rights as guaranteed by the Fourteenth Amendment when it denied his reinstatement petition without affording him prior notice and an opportunity to be heard; and (2) that the Commission's order denying his reinstatement petition is inadequate as a matter of law in that it does not contain any findings of fact nor conclu-

sions of law and is, therefore, invalid. We shall address these issues seriatim.

Keeley first argues that he is entitled to both advance notice and an opportunity to be heard and present evidence before the Commission can take final action on his petition for reinstatement of his real estate broker's license. By failing to afford him notice and an opportunity to be heard, he contends that the Commission violated his right to procedural due process guaranteed by the Fourteenth Amendment to the Federal Constitution.

A due process analysis is a two-staged process; first there must be a determination of whether a constitutionally protected property or liberty interest is implicated, and, if so, then assessing the appropriate procedural protection due. *Neal v. Secretary of the Navy,* 472 F. Supp. 763 (E.D. Pa. 1979), *rev'd on other grounds,* 639 F.2d 1029 (3d Cir. 1981). Naturally, before one is entitled to procedural due process, one must possess an identifiable property right or liberty interest. *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District,* 76 Pa. Commonwealth Ct. 65, 463 A.2d 1198 (1983). To have a property interest in a benefit or privilege that is protected by procedural due process, one must clearly have more than an abstract need or desire for it or an unilateral expectation of it, rather, he must have a legitimate claim of entitlement to it. *Robb v. City of Philadelphia,* 733 F.2d 286 (3d Cir. 1984); *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977). While property interests are recognized and protected by the Federal Constitution, they are not created thereby, rather, they are created and their dimensions are defined by existing rules or understandings that stem from independent sources such as state law and a state may, consistent with due pro-

cess, define or create property interests as it sees fit. *ARA Services, Inc. v. School District of Philadelphia,* 590 F. Supp. 622 (E.D. Pa. 1984). Therefore, if Keeley had a constitutionally protected property interest in the reinstatement of his revoked broker's license, that interest must stem from state law.

Our examination of the Act convinces us that the former holder of a revoked real estate license retains no property interest in that license once it has been revoked by the Commission through a procedure consistent with due process. As noted by both Keeley and the Commission, the Act in effect at the time of Keeley's petition for reinstatement contained no specific provision which addressed the Commission's power to reinstate revoked licenses. We do note, however, that the General Assembly had addressed this precise issue by amending the Act to add Section 501(c), 63 P.S. §455.501(c), which provides that:

> (c)  Unless ordered to do so by Commonwealth Court, the commission shall not reinstate the license, within five years of the date of revocation, of any person whose license has been revoked under this act. Any person whose license has been revoked may reapply for a license at the end of the five-year period but must meet all of the licensing qualifications of this act for the license applied for, to include the examination requirement.

This amendment was enacted by the General Assembly and signed by the Governor on March 29, 1984, ten days *prior* to Keeley's petition, but did not become effective until ninety days thereafter. Accordingly, this amendment is not applicable to our disposition of the instant case which the Commission concedes affects substantive rights and is not merely procedural. We conclude that under the Act, prior to the

1984 amendment, former licensees did not possess any property right in their revoked licenses.

We initially note that the United States Supreme Court has long recognized the right of the states to regulate and license occupations and professions in such a manner so as to safeguard the interest of the public. *See, e.g., Williamson v. Lee Optical Co.*, 348 U.S. 483 (1955). The law has also long recognized that once a license has been obtained to engage in an occupation, the licensee obtains a protected property interest in the continuation of that license which can not be revoked without affording the licensee procedural due process. *See, e.g., Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117 (1926) (accountant's admission to practice before the Board of Tax Appeals, now the U.S. Tax Court); *Ex parte Robinson*, 84 U.S. (17 Wall.) 505 (1874) (attorney's admission to practice). However, once that license has been revoked through a procedure consistent with the individual's due process guarantees, that individual is stripped of whatever property interest he possessed in the license. *See Counts v. Pennsylvania Board of Probation and Parole*, 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985) (revocation of parole following *Morrissey* hearings stripped parolee of his constitutionally protected liberty interest in parole allowing Parole Board to deny reparole without a due process hearing). This is so in that when a license or privilege is revoked, it is extinguished and the former possessor is returned to the same position he occupied had the license or privilege never been issued. The term "revoke" is defined as "[t]o annul or make void by recalling or taking back; to cancel, rescind, repeal or reverse." Black's Law Dictionary 1188 (5th Ed. 1979). Therefore, once the license has been voided or annulled any property rights or in-

terests stemming from that license are likewise voided or annulled.

Our review of Section 501(b) of the Act, 63 P.S. §455.501(b), dealing with inactive licenses, likewise convinces us that no property rights remained in a revoked real estate license. Section 501(b) permitted the Commission to reissue a license to an individual who was "inactive" by virtue of not renewing his license. If the licensee was "inactive" for a period of five years or more, the Commission was precluded from reissuing a license until the licensee had successfully taken the examination pertaining to his particular license. If inactive for a period of less than five years, the Commission can reissue the license without examination. We do not, however, read this section as including revoked licenses as being in the category covered by Section 501(b). The statutory language clearly addresses only those licensees who are inactive by virtue of failing to renew their licenses. The fact that the General Assembly specifically addressed the issue of revoked licenses by its 1984 amendment to the Act indicates that it did not consider revoked licenses included in the category of "inactive" licenses addressed in Section 501(b). Accordingly, we find no support for Keeley's contention that he possessed a constitutionally protected property interest in his revoked real estate broker's license which required a due process hearing prior to the Commission's denial of his petition for reinstatement of that license. Since we have concluded that he did not have a protected property interest in his revoked broker's license, we need not address the second stage of the due process analysis as he was entitled to no procedural due process guarantees.

While Keeley possessed no protected property interest in his revoked broker's license, he did have the right to reapply to the Commission for the issuance

of a broker's license if he met the qualifications of Section 511 of the Act, 63 P.S. §455.511, and his application complied with Section 512 of the Act, 63 P.S. §455.512. Then, in the event that his application for a license was denied on the basis of a non-objective qualification, such as not being of good moral character, he may be entitled to a hearing to contest the Board's determination on that issue. *Cf. Oliver v. Pennsylvania Board of Psychologist Examiners*, 45 Pa. Commonwealth Ct. 195, 404 A.2d 1386 (1979) (unsuccessful applicant for psychologist's license entitled to formal administrative hearing to contest the denial of his license application). *See also, Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973) (unsuccessful applicant for motor vehicle license entitled to a due process hearing to contest the denial of a license); *Hornsby v. Allen*, 326 F.2d 605 (5th Cir. 1964) (due process requires that unsuccessful applicant for retail liquor license be given a hearing and an opportunity to be heard). Accordingly, we could review Keeley's petition for reinstatement as if it were an application for a license. Section 512, pertaining to applications for a license as a real estate broker, reads in pertinent part, as follows:

§455.512.   *Application for license*

(a)   An application for a license as real estate broker shall be made in writing, to the department, upon a form provided for the purpose by the department and shall contain such information as to the applicant as the commission shall require.

(b)   The application shall state the place of business for which such license is desired.

(c)   The application shall be received by the commission within three years of the date upon which the applicant took the examination.

The term "department" used in this section refers to the Department of State acting through the Commissioner of Professional and Occupational Affairs. Section 201 of the Act, 63 P.S. §455.201.

Our review of Keeley's petition for reinstatement clearly shows on its face that it does not meet the requirements of Section 512 for an application for a broker's license. Initially, the petition lacks a statement of an address where he proposes to do business as a broker which is required by subsection (b). The only portion of the petition which refers to an address is that part which avers that he has been residing in the State of Florida since August of 1981. Additionally, the petition was filed with the Commission rather than with the department as required by statute and there is no indication that it contains all the information required of applicants by the Commission. Therefore, we decline to treat Keeley's petition for reinstatement of his revoked license as an application in that it clearly does not meet the objective requirements of Section 512.

What Keeley may have attempted to accomplish by filing a petition for reinstatement rather than a reapplication for a license is to reopen the Commission's September 20, 1982 adjudication whose appeal period had long since expired and circumvent the application requirements of the Act. As there is no provision in the Act as it existed at the time Keeley filed his reinstatement petition for such action and the period for requesting reconsideration or filing an appeal from the Commission's 1982 adjudication had expired, Keeley's petition was of no legal effect and the Commission was not required to provide him with either prior notice or an opportunity to be heard before it denied the relief he requested.

Based on the above conclusions, we shall affirm the Commission's denial of Keeley's petition for re-

instatement of his revoked broker's license. We express no opinion on the issue of whether the 1984 amendment to the Act, which prohibits the Commission from relicensing for a five-year period any person whose real estate license has been revoked, would apply to such applications as that issue is presently not before us.

### ORDER

Now, December 4, 1985 the order of the State Real Estate Commission, dated June 20, 1984, which denied the petition of James W. Keeley, Jr., to reinstate his real estate license, is hereby affirmed.

Judge MACPHAIL concurs in the result only.