### PRE–NEED FAMILY SERVICES EASTERN REGION, Petitioner

v.

### BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 5, 2006.

Decided July 26, 2006.

Reargument Denied En Banc Sept. 6, 2006.

---

David M. Kozloff, Wyomissing, for petitioner.

Thomas A. Blackburn, Asst. Counsel, Harrisburg, for respondent.

James J. Kutz, Harrisburg, for amicus curiae, The Pennsylvania Cemetery & Funeral Association.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and FRIEDMAN, Judge.

OPINION BY Judge FRIEDMAN.

Pre–Need Family Services Eastern Region (Pre–Need) petitions for review of the September 9, 2005, order of the Bureau of Professional and Occupational Affairs directing Pre–Need to (1) pay $1,000 in civil penalties for engaging in the unlicensed practice of funeral directing in violation of sections 13(a) and 13(c) of the Funeral Director Law (Law) [1] and (2) cease and desist offering direct cremation packages

---

**1.** Act of January 14, 1952, P.L (1951) 1898, *as amended*, 63 P.S. §§ 479.13(a), (c). Sections 13(a) and (c) of the Law provide in relevant part:

> (a) No person shall practice as a funeral director as defined herein, in this Commonwealth unless he holds a valid license so to do as provided in [the Law]. . . .

> (c) No person other than a licensed funeral director shall, directly or indirectly, . . . offer to or enter into a contract with a living person to render funeral services to such person when needed.

63 P.S. §§ 479.13(a), (c).

unless and until Pre–Need obtains a license. We affirm.

Incorporated in 2002, Pre–Need is in the business of selling or offering to sell to the public, on a pre-need basis, funeral merchandise and direct cremation packages.[2] Pre–Need does not employ funeral directors or act on behalf of a licensed funeral director or licensed funeral home; rather, Pre–Need advertises its services through telemarketers, sends its salespeople to meet with potential customers to discuss the direct cremation packages and, when appropriate, has the salespeople prepare and enter into the direct cremation package "security agreement" on behalf of Pre–Need. Pre–Need then contracts with Cremation Services of Pennsylvania to have that company remove, transport and store the body, as well as complete the necessary paperwork for the cremation, cremate the body and place the cremains in an appropriate container. Pre–Need and Cremation Services of Pennsylvania both assist the family with the obituary, contact the appropriate state and federal agencies and deliver the cremains to the next of kin. Pre–Need does not embalm, wash or dress the body, and does not provide any type of "funeral service," "life commemoration service" or "tribute service" for the deceased.

On April 20, 2004, the Commonwealth filed an order to show cause with the State Board of Funeral Directors (Board) alleging that Pre–Need was engaged in the unlicensed practice of funeral directing. Pre–Need filed an answer denying the allegations and raising new matter, to which the Commonwealth responded, and hearings were held before the Board.

On September 9, 2005, the Board issued its adjudication. Relying on this court's decision in *Cornerstone Family Services, Inc. v. Bureau of Professional and Occupational Affairs*, 802 A.2d 37 (Pa.Cmwlth. 2002), *aff'd*, 577 Pa. 136, 842 A.2d 918 (2004), the Board held that it had jurisdiction to determine whether Pre–Need's sale of cremation services directly to the public constituted the unlicensed practice of funeral directing. The Board then concluded that Pre–Need's activities constituted the unlicensed practice of funeral directing in violation of sections 13(a) and 13(c) of the Law, 63 P.S. §§ 479.13(a), (c). (Conclusions of Law 1, 3–4.) Accordingly, the Board directed Pre–Need to cease and desist its unlicensed activities and to pay a civil penalty in the amount of $1,000.

■■■ On appeal to this court,[3] Pre–Need first argues that the Board erred in

**2.** According to Pre–Need's information sheet, a direct cremation package includes: (1) removal of the body from anywhere in the Commonwealth of Pennsylvania; (2) review and completion of any and all paperwork necessary to complete arrangements by a cremation specialist, who also will be in contact with the next of kin; (3) storage of the body according to Pennsylvania law; (4) placement of the body in a nonpermanent container for cremation; (5) cremation of the body; (6) placement of the cremated remains (cremains) into a nonpermanent container or in a burial urn or a non-ceremonial scattering of the cremains; (7) provision of five death certificates and completion of all state and federal forms in connection with the cremation; (8) assistance in notifying the Social Security

Administration (SSA), Pension Benefits and Veterans Administration (VA) for claims; (9) assistance to family with newspaper obituary; (10) an attempt to accommodate the return of the cremains with a church, cemetery or private memorial service, arranged and paid for by the next of kin; and (11) arrangement with the next of kin for the return of the cremains. (R.R. at 155a.)

**3.** Our scope of review is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether the necessary findings of fact are supported by substantial evidence. *Ferguson v. Pennsylvania State Board of Funeral Directors*, 768 A.2d 393 (Pa.Cmwlth.), *appeal denied*, 566 Pa. 670, 782 A.2d 549 (2001).

concluding that it had jurisdiction to decide this matter and in determining that the sale of direct cremation packages to the public constitutes the "practice" of "funeral directing." We disagree.

Section 15(1) of the Law defines the term "practice." It states:

> A person, either individually or as a member of a partnership or of a corporation, shall be deemed to be practicing as a funeral director within the meaning and intent of this [Law] who: (1) holds himself out to the public *in any manner* as one who is *skilled in the knowledge,* science and *practice of funeral directing,* embalming or undertaking, or who advertises himself as an undertaker, mortician or funeral director.

63 P.S. § 479.15(1) (emphasis added). Moreover, section 2(1) of the Law defines "funeral director" as:

> any person *engaged* in the profession of a funeral director *or in the care and disposition of the human dead, or* in the practice of disinfecting and preparing by embalming the human dead for the funeral service, burial or cremation, *or the supervising of the burial, transportation or disposal of deceased human bodies. . . .* The term . . . shall *also mean a person who makes arrangements for funeral service* and who sells funeral merchandise to the public incidental to such service or *who makes financial arrangements for the rendering of such services and the sale of such merchandise.*

63 P.S. § 479.2(1) (emphasis added).

With regard to whether Pre–Need engaged in the unlicensed practice of funeral directing, the Board made the following relevant findings of fact. Pre–Need does not hold a license to practice funeral directing or to operate a funeral facility in the Commonwealth. (Findings of Fact, Nos. 1–3.) Pre–Need employs salespersons, rather than licensed funeral directors, to personally meet with customers regarding its services and products, and Pre–Need does not act on behalf of any particular funeral home in the Commonwealth. (Findings of Fact, Nos. 9–10.) Pre–Need's direct cremation packages include the pick-up and removal of the body within the Commonwealth, storage and sheltering of the deceased as required, placement of the cremains in a container, crematory fees and completion of the requisite paperwork associated with the cremation of the deceased. (Findings of Fact, No. 11.) Pre–Need contracts with Cremation Services for Pennsylvania to pick up the deceased's body, place the body in a non-permanent container for cremation and cremate the body. (Findings of Fact, No. 13.) Based on these findings, which are supported by the record, we agree that Pre–Need's actions constitute the "practice" of "funeral directing" in violation of sections 13(a) and (c) of the Law.

In *Cornerstone,* this court was asked to consider whether the Board had jurisdiction over Cornerstone's cremation services and whether the services offered by Cornerstone fell within the definition of funeral director as defined by section 2 of the Law. Cornerstone and its affiliate companies were in the business of, *inter alia,* offering to sell goods and services related to cremation directly to the public. These goods and services included transportation, cremation, internment and other arrangements for disposition, such as using an urn, and could be purchased on an at-need or pre-need basis. Before this court, Cornerstone argued that it was not engaged in the practice of funeral directing because the statutory definition included embalming, a service that Cornerstone did not offer. In rejecting Cornerstone's argument, we reasoned that the practice of embalming was only one of the possible activities that a funeral director might en-

gage in and that the Law defines a funeral director as "an individual who is engaged in the disposition of bodies *or* in the practice of embalming, *or* supervises the burial *or* disposal of bodies." *Cornerstone,* 802 A.2d at 40 (emphasis in original). Because Cornerstone was in the business of disposing of human bodies, supervising burials, transporting, and *selling goods and services related to cremation, a form of disposition of dead bodies,* the court concluded that Cornerstone was by definition engaged in funeral directing and therefore subject to the Law. Having determined that Cornerstone's activities were subject to the Law, this court held that the Board had jurisdiction over these activities.

It is undisputed that Pre–Need's direct cremation packages include the transpor-

tation, storage and cremation of dead bodies, provision of containers, such as an urn, for the cremains, the return of the cremains and assistance from Pre–Need to help the family with the obituary, contact with government agencies and the completion of necessary paperwork related to the cremation. Indeed, a witness for Pre–Need acknowledged at the Board hearing that Pre–Need provides the direct disposition of the human dead, (R.R. II at 250a), and employs unlicensed salespeople to market and sell these goods and services, (R.R. I at 18a–19a). As such, Pre–Need is in the profession of disposing of deceased human bodies through direct cremation and, like Cornerstone, sells goods and services related to direct cremation to the public.[4] Moreover, because *Cornerstone*

---

4. We reject Pre–Need's attempt to distinguish *Cornerstone* on the basis that, unlike Cornerstone, Pre–Need's direct cremation packages do not include life commemoration or tribute services. We note that, throughout its brief, Pre–Need limits its understanding of the term "service" and/or "funeral service" to include only ritual/traditional life commemoration or tribute services. (Pre–Need's brief at 14, 15, 20, 25, 30, and 32.) However, such limitation on the meaning of "services" is unwarranted. "Services" is defined as intangible commodities in the form of human effort, such as labor, skill or advice. Black's Law Dictionary 1372 (8th ed.2004); Webster's Third New International Dictionary 2075 (1993) (providing services rather than tangible things or useful labor that does not produce a tangible commodity). Clearly, funeral directors offer many different services, i.e., intangible commodities, beyond those recognized by Pre–Need. Moreover, as previously discussed, our decision in *Cornerstone* did not rest on the fact that Cornerstone offered life commemoration or tribute services; rather, we explained that Cornerstone was engaged in funeral directing and was subject to the Law because it was *in the business of disposing of human bodies, supervising burials, transporting, and selling goods and services related to cremation.*

In arguing that a license is not necessary unless ritual/traditional life commemoration

services or embalming services are offered, Pre–Need essentially suggests, as Cornerstone did, that for the Law to apply, an individual must engage in *all* of the activities listed in the definition of funeral director. Pre–Need asserts that, if we accept the Board's definition of "funeral director," the result would require *anyone* involved in the transportation or storage of a dead body, such as a paramedic or morgue worker, to be a licensed funeral director. However, we previously rejected that argument in *Ferguson.* In that case, we affirmed the Board's determination that an insurance agent was engaged in the unlicensed practice of funeral direction when she, *inter alia,* assisted clients in selecting funeral goods and services and offered to contract with her clients for those goods and services. In doing so, we rejected the insurance agent's argument that a logical extension of the Board's holding would require any individual, including one's own children or minister, who assists another in planning a funeral to be a licensed funeral director. *Id.* We reasoned that, unlike the insurance agent, these individuals would not have a direct financial interest in the selection of the goods and services and would not enter into a contract for the goods and services when needed. *Id.* Moreover, a plain reading of the statutory definition does not support Pre–Need's argument. Had the General Assembly intended to

clearly gives the Board jurisdiction over these matters, any argument to the contrary made by Pre–Need must fail. Accordingly, the Board did not err in relying on *Cornerstone* to determine that it had jurisdiction in this matter or that Pre–Need is engaged in the unlicensed practice of funeral directing in violation of the Law.[5]

Pre–Need next raises three constitutional arguments challenging the Board's actions.

 First, Pre–Need asserts that the Board's cease and desist order impermissibly infringes upon Pre–Need's constitutionally protected right to free commercial speech because it prevents Pre–Need from disseminating information about direct cremation packages to the public. However, for commercial speech to receive constitutional protection, it must first concern lawful activity. *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980);

*Kleese v. Pennsylvania State Board of Funeral Directors*, 738 A.2d 523 (Pa.Cmwlth. 1999), *appeal denied*, 562 Pa. 676, 753 A.2d 822 (2000). As previously stated, Pre–Need is violating the Law by allowing unlicensed salespersons to engage in the practice of funeral directing; consequently, its speech does not concern a lawful activity and is not entitled to protection.[6]

 Second, Pre–Need contends that the Board's cease and desist order interferes with its property rights without due process of the law and results in an unlawful taking of property without compensation. Pre–Need asserts that it has a property right in allowing unlicensed salespersons to sell direct cremation packages to the public because it has invested substantial time and money in its business, that the Board has given explicit assurances that it does not have jurisdiction over the sale of direct cremation packages and that there has been no change in circumstances to justify the re-

limit the licensure requirement to only those individuals who engaged in *all* of the activities listed in the definition, it would have used "and" instead of "or" in the definition. Finally, unlike Pre–Need's employees, the conduct and actions of paramedics, morgue workers and others similarly situated are regulated by other Commonwealth agencies. *See generally* the Emergency Medical Services Act, Act of July 3, 1985, P.L. 164, *as amended,* 35 P.S. §§ 6921–6938 (providing for the regulation of paramedics), and Article XII of Chapter 1 of The County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 1231–1235 (providing for the regulation of coroners and morgues). Accordingly, we reject Pre–Need's argument.

5. Our conclusion also is supported by our decision in *Ferguson*, in which we affirmed the Board's conclusion that an insurance agent held herself out to the public as one skilled in the knowledge of funeral directing, i.e., engaged in the practice of funeral directing, when she assisted her clients to, *inter*

*alia*, select funeral goods and services. *Id.* Here, Pre–Need's unlicensed salespeople, like the insurance agent, meet directly with potential customers, present information about the different direct cremation packages, present price lists for the different direct cremation packages and offer to enter or enter into a contract with the customer to provide those goods and services described in the direct cremation package when needed.

6. For this reason, Pre–Need's reliance on *Walker v. Flitton*, 364 F.Supp.2d 503 (M.D.Pa. 2005), to support its argument is misplaced. In *Walker*, the district court concluded that the Board violated the First Amendment by prohibiting unlicensed individuals from interacting with consumers to sell pre-need funeral services and plans *where those individuals were under the direct supervision of a licensed funeral director.* Indeed, the district court warned that it was *not* determining the legality of the conduct of unlicensed individuals who, like Pre–Need, were unconnected to licensed funeral directors. *Id.*

versal of these assurances. (Pre–Need brief at 33.)

In order to establish a takings claim, one must first demonstrate that a property right has been affected. *People United to Save Homes v. Department of Environmental Protection,* 789 A.2d 319 (Pa.Cmwlth.2001). Here, the Commonwealth created a property right in the practice of funeral directing, which includes the sale of goods and services related to cremation to the public.[7] However, this property right is limited to those who have obtained a license from the Board to engage in the practice of funeral directing. 63 P.S. § 479.13(a) (providing that no person may engage in the practice of funeral directing until the person holds a license from the Board); *Pittenger v. Department of State, Bureau of Professional and Occupational Affairs,* 142 Pa.Cmwlth. 57, 596 A.2d 1227 (1991) (holding that an individual has no property right to a license once that license has been revoked, and one who has never held a license has no property right in a license); *Keeley v. State Real Estate Commission,* 93 Pa.Cmwlth. 291, 501 A.2d 1155 (1985). Here, it is undisputed that Pre–Need is not licensed under the Law and, thus, has no protected right to engage in the practice of funeral directing.

Nevertheless, Pre–Need argues that its property right to conduct its business is derived from its investment of money in the business. Essentially, Pre–Need asserts that whenever an individual expends money for a business, even one operated in violation of the law, the Commonwealth may not order the closing of that business without paying just compensation. · However, because there is no authority for an entity to operate in violation of the law, there can be no corresponding right to compensation when the Commonwealth seeks to end the violation.

We also reject Pre–Need's contention that the Board has consistently held that cremation services, such as direct cremation packages, are outside its jurisdiction. Moreover, even if this were true, our decision in *Cornerstone* would render such holdings invalid.[8]

Finally, Pre–Need asserts that it was denied its constitutional right to due process because it did not receive a hearing before a fair and impartial tribunal. Specifically, Pre–Need argues that, because certain members of the Board are licensed funeral directors actively engaged in the business of disposing of dead human bodies, they are in direct competition with, and biased against, companies like Pre–Need that offer direct cremation packages.

To show impermissible bias, the interest of the adjudicator in the outcome of the case must be direct and substantial. *Subaru of America, Inc. v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 842 A.2d 1003 (Pa.Cmwlth. 2004). Further, impermissible bias requires the party asserting the bias to produce evidence particular to the adjudicator and particular to the controversy. *Id.* The disqualifying bias cannot simply be inferred from the status of the adjudicator, particularly where the status is required

---

7. Property rights may be created and their dimensions defined by sources such as state law, and a state may, consistent with due process, define or create property interests as it sees fit. *Keeley v. State Real Estate Commission,* 93 Pa.Cmwlth. 291, 501 A.2d 1155 (1985).

8. In fact, during the Board hearing, Pre–Need's own witness acknowledged that, as a result of *Cornerstone,* he has used only licensed funeral directors to present direct cremation price information to the public, and his unlicensed company stopped selling direct cremation packages to the public. (R.R. I at 118a–19a, 141a.)

by statute.[9] *Id.* Here, Pre–Need offers no evidence that any individual funeral director member was particularly biased in this controversy before the Board. Rather, Pre–Need asserts that the status of these members as licensed funeral directors results in the impermissible bias against Pre–Need. Thus, we conclude that the failure of the funeral director members of the Board to recuse themselves did not violate Pre–Need's right to a fair and impartial hearing.[10] *See Subaru of America, Inc.*

Accordingly, we affirm.[11]

### ORDER

AND NOW, this 26th day of July, 2006, the order of the Bureau of Professional and Occupational Affairs, dated September 9, 2005, is hereby affirmed.

9. The Law requires that five members of the Board be licensed funeral directors of good moral character who have been actively engaged in the practice of funeral directing for at least ten years immediately preceding their appointment to the Board. Section 19(a) of the Law, 63 P.S. § 479.19(a).

10. Further, Pre–Need asserts that the Board erred by refusing to issue a subpoena requiring a former Board prosecutor to testify regarding the Board's historic position regarding direct cremation services. The General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.142, authorize the Board to issue a subpoena for evidence that is relevant and material to the proceeding. It is within the Board's discretion to grant a subpoena, and this court will not reverse the agency's decision except for an abuse of discretion, which is demonstrated where the limitation is manifestly unreasonable or shows particular partiality, prejudice, bias or ill will toward a litigant. *Subaru of America, Inc.* Here, the Board did not issue the requested subpoena, reasoning that the prosecutor's tes-

timony regarding the Board's position prior to *Cornerstone* was not relevant to determine whether Pre–Need *currently* was engaged in the unlicensed practice of funeral directing. We will not say that refusing to order testimony regarding a position of the Board which this court has since rejected is an abuse of discretion.

11. Other states differ in how they regulate entities that sell pre-need contracts. For example, Florida regulates this activity through its funeral director board, but has a separate "pre-need sales agent" license, which outlines the requirements for obtaining licensure. FLA. STAT. ANN. § 497.466 (2005). Georgia requires that "pre-need sales agents" be registered and supervised by "pre-need dealers," and both are subject to penalties for violating the law. GA.CODE ANN. § 10–14–5 (2000). Mississippi mandates that anyone that sells "pre-need services" be registered with the secretary of state, who is authorized to promulgate regulations to oversee pre-need salespeople. MISS.CODE ANN. § 75–63–65 (2001).