**Christopher DeSIVO, Petitioner**

v.

**PENNSYLVANIA STATE POLICE, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 2007.

Decided March 14, 2007.

---

7. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 509(a).

Christopher DeSivo, petitioner, pro se.

Tara L. Patterson, Asst. Counsel, and Barbara L. Christie, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a *pro se* petition for review filed by Christopher DeSivo (Petitioner) seeking to appeal the outcome of an internal Pennsylvania State Police (State Police) investigation of his claim that one of its officers mishandled and altered documents used against him in his criminal trial.

Petitioner is an inmate incarcerated at the Clinton County Correctional facility. On February 12, 2003, Petitioner was arrested as a fugitive parole violator and for various drug charges. Petitioner was convicted in the Court of Common Pleas of Bradford County for these offenses. Following his conviction, Petitioner filed a complaint against State Trooper Michael Adams (Trooper Adams) with the State Police's Internal Affairs Division (IAD)[1] asserting that Trooper Adams had tampered with documents used against Petitioner at his trial by placing the wrong incident number on the lab report for Petitioner's case, as well as commingling documents from other cases with Petitioner's documents. Petitioner enclosed the relevant documents with his complaint and asked the State Police to investigate this matter.

---

[1] According to the State Police, the IAD provides the following functions: (1) Receive and document all allegations of misconduct by personnel; (2) Initiate, conduct, control, and coordinate the assignment and completion of investigations of allegations of misconduct, administrative investigations required by directive, and investigations in which personnel are the subject; (3) Initiate, conduct, control, and coordinate the assignment and completion of investigations concerning the use of physical force or shooting incidents involving members/enforcement officers, as required by directive; (4) Maintain records of investigations conducted under the supervision of the Division; (5) Disseminate statistical information concerning allegations of misconduct by personnel; and (6) Conduct investigations as requested by the Commissioner.

By letter dated July 28, 2006, Captain Willard Oliphant, IAD Director, informed Petitioner that his complaint had been forwarded to Captain Kenneth Hill (Captain Hill), Commanding Officer of State Police Troop P, Wyoming barracks, to conduct an inquiry into Petitioner's allegation. After conducting an investigation into the allegation, Captain Hill determined that Petitioner's complaint was unfounded and notified Petitioner of his determination via letter dated October 12, 2006.

Again, by letter dated October 20, 2006, Petitioner asked Captain Hill to explain his determination that Petitioner's complaint was unfounded and to provide him with a copy of his findings. In a letter dated October 24, 2006, Captain Hill provided Petitioner with the following explanation of Trooper Adams' actions:

> Very simply, Tpr. ADAMS transported several pieces of evidence from different cases to the crime laboratory. He then prepared reports documenting that action. While doing so, he inadvertently put the wrong incident number on the report regarding your case. He subsequently discovered his mistake and corrected it according to Department regulations, with absolutely no attempt to misrepresent anything. This action amounted to nothing more than a clerical error.

Captain Hill went on to state that his decision was reviewed by his immediate supervisor who concurred that Petitioner's allegation was unfounded. Captain Hill also stated that his decision was then reviewed by the State Police's Deputy Commissioner of Professional Responsibility as well as by an Assistant U.S. Attorney who concluded that Petitioner's complaint was frivolous. Captain Hill notified Petitioner his decision was final, but that Petitioner had the opportunity to challenge the decision through the "judicial process" and that he raise the matter in his appeal process of his criminal conviction.

Petitioner filed a petition for review with this Court seeking to appeal Captain Hill's October 12, 2006 and October 24, 2006 determinations that his complaint about Trooper Adams' conduct was unfounded. The State Police then filed a motion to quash the appeal contending that a finding of unfounded is not an appealable order under the Administrative Agency Law (AAL) because it is not an adjudication within the meaning of Section 101 of the AAL, 2 Pa.C.S. § 101. Petitioner contends that it was an adjudication because he was aggrieved as Captain Hill's determination violated his procedural due process rights.

■■■ Section 702 of the AAL, 2 Pa. C.S. § 702, provides that "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." An "adjudication" is defined by Section 101 of the AAL, as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." Where no right, privilege or immunity of a person is in jeopardy, an agency's action does not constitute an adjudication. *Dauer v. Department of Education*, 874 A.2d 159, 162 (Pa.Cmwlth.2005).

Not every determination made by a commonwealth employee or board is a decision of a "commonwealth agency." [2] For

---

**2.** Section 101 of the AAL defines "common-    wealth agency" as "[a]ny executive agency or

example, in *Ricketts v. Central Office Review Committee of the Dept. of Corrections,* 125 Pa.Cmwlth. 670, 557 A.2d 1180 (1989), we held that an inmate misconduct appeal panel hearing internal prison grievances is not an administrative agency rendering final, appealable orders, and not every determination of a commonwealth agency that indirectly affects a person makes him or her "aggrieved" and able to appeal. For example, in *Nitterhouse v. Department of General Services,* 706 A.2d 381, 383 (Pa.Cmwlth.1998), we held that the Department of General Services did not render an adjudication when it declined to renew a lease because the property owner "had no legitimate expectation of personal or property rights in the awarding of the lease." *See also Keeley v. State Real Estate Commission,* 93 Pa.Cmwlth. 291, 501 A.2d 1155, 1157 (1985) ("[t]o have a property interest in a benefit or privilege that is protected by procedural due process, one must clearly have more than an abstract need or desire for it or an unilateral expectation of it, rather, he must have a legitimate claim of entitlement to it.")

In this case, Petitioner seeks to appeal a determination made by the IAD that his complaint concerning Trooper Adams had no validity. First, the IAD is not a commonwealth agency that renders final appealable orders; all it can do is recommend that charges be brought, and it does not have the power to impose sanctions that would make anyone aggrieved as a result of its findings. Second, even if the IAD were a commonwealth agency, its de-

cision would not aggrieve Petitioner because remedying any harm that Petitioner purportedly suffered was not the purpose of the IAD investigation. The investigation and the results of that investigation only addressed whether Trooper Adams breached his duty to the public and whether charges were warranted by the State Police. Even if his complaint were deemed founded by the IAD, Petitioner's remedy for that harm could only be obtained in other proceedings. Because Petitioner is not aggrieved as his interests are not directly affected by the IAD's determination, he has no right to appeal under Section 702 of the AAL.

Accordingly, because the IAD is not a commonwealth agency and Petitioner is not aggrieved by its determination, his appeal is quashed.

### ORDER

AND NOW, this *14th* day of *March,* 2007, the Petition for Review filed by Christopher DeSivo in the above-captioned matter is quashed.

---

independent agency." An "executive agency" is defined as "[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government, but the term does not include any court or other officer or agency of the unified judicial system, the General Assembly and its officers and agencies, or any independent agency." An "independent agency" is defined as "[b]oards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor, but the term does not include any court or other officer or agency of the unified judicial system or the General Assembly and its officers and agencies."