IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary L. Kretchmar,                          :
                        Appellant           :
                                            :   No.  405 C.D. 2015
            v.                              :
                                            :   Submitted:  July 31, 2015
Pennsylvania Department of                  :
Corrections and Douglas Russell             :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  November 16, 2015


Gary L. Kretchmar (Kretchmar) appeals from the May 21, 2014 order of the Court of Common Pleas of Montgomery County (trial court) sustaining the preliminary objections of the Pennsylvania Department of Corrections and Douglas Russell (collectively, DOC) and dismissing Kretchmar's amended complaint.

The underlying facts are not in dispute.  In February 2010, DOC transferred Kretchmar, who is serving a life sentence, from the State Correctional Institution at Graterford to a correctional institution operated by the Virginia Department of Corrections (Virginia DOC) to alleviate overcrowding.  On August 10, 2010, while in the custody of the Virginia DOC, Kretchmar engaged in a verbal dispute with his cellmate and was overheard by a corrections officer using vulgar

language. Kretchmar was issued a misconduct by the Virginia DOC.[1] On April 18, 2012, shortly after his transfer back to Pennsylvania, Kretchmar learned that Russell, a DOC employee, had entered a summary report of his Virginia misconduct into DOC's misconduct system, which rendered Kretchmar ineligible for a preferred housing status referred to as "A Code."

Because DOC's misconduct system did not include the specific charge to which Kretchmar had plead guilty in Virginia, Russell relied on a conversion chart he had prepared and characterized the misconduct as a class I misconduct under DOC's two-tier system. Kretchmar sent Russell correspondence dated April 23, 2012, complaining about this characterization and the corresponding loss of preferred housing status. Russell responded that the misconduct had been properly entered into DOC's system. On May 21, 2012, Kretchmar sent similar correspondence to Jeffrey Baker, a staff assistant for DOC's eastern region, who replied that while the misconduct might have been more comparable to a class II misconduct, any alleged mischaracterization was of no consequence because DOC's policy, under eligibility for "A Code" status, requires that an inmate not have any misconducts, regardless of class, for three years. Kretchmar then filed an inmate grievance, which was ultimately denied.

On November 16, 2012, Kretchmar filed a complaint against DOC and Russell alleging violations of his due process rights under the United States and Pennsylvania Constitutions as well as a violation of section 93.10 of DOC's regulations, 37 Pa. Code §93.10 (relating to inmate discipline). DOC filed

---

[1] This misconduct originally alleged that Kretchmar threatened his cellmate with bodily harm. However, Kretchmar later executed a Virginia DOC penalty offer whereby he pled guilty to a reduced charge of using vulgar or insolent language and received ten days in isolation.

2

preliminary objections in the nature of a demurrer, and Kretchmar thereafter filed an amended complaint again alleging due process violations as well as violations of a correctional services contract executed by DOC and the Virginia DOC and a document entitled "OUT OF STATE FACILITY TOURS."[2]  More specifically, Kretchmar alleged that DOC's administrative policy, DC-ADM 801, does not contain a rule prohibiting the use of vulgar language toward an inmate that was similar to the charge of using vulgar or insolent language that he pled guilty to while in the custody of the Virginia DOC.  Therefore, Kretchmar stated that DOC had no basis to record a Virginia DOC class II misconduct charge for use of vulgar or insolent language as if it were a DOC class I misconduct charge.  Kretchmar sought injunctive relief in the

---

[2] Kretchmar attached a copy of the correctional services contract and the "OUT OF STATE FACILITY TOURS" document to his amended complaint.  The correctional services contract refers to DOC as "PDOC" and the Virginia DOC as "VDOC."  Section 6.6(b) of this contract addresses discipline for out-of-state misconducts, providing, in pertinent part, as follows:

> VDOC shall inform PDOC of disciplinary charges and sanctions imposed against Pennsylvania Inmates for violations of the rules and regulations of the VDOC.  PDOC shall equate the VDOC infractions to the same or substantially similar violations of the PDOC Code of Inmate Discipline for purposes of maintaining the inmate's disciplinary record.  Any consequence of an inmate's violation of VDOC rules and regulations shall carry through to PDOC upon the Pennsylvania Inmate's return to Pennsylvania.  The appropriate Commonwealth's Attorney will be notified when an incident involves criminal misconduct by a Pennsylvania Inmate and possible prosecution.  Criminal investigation and/or prosecution shall not preclude or delay VDOC disciplinary action.

(Amended Complaint, Exhibit A, at 15.)  The document entitled "OUT OF STATE FACILITY TOURS" appears to be a memo from the Secretary of DOC to all inmates and advises that "[a]ny misconduct that you receive while in out of state placement will have the same effect on custody level, institution placement, parole, pre-release, etc. as would a similar misconduct in a Pennsylvania prison."  (Amended Complaint, Exhibit B, at 2.)

nature of an order directing DOC to rescind his class I misconduct charge, correct his institutional record, and reinstate his custody and program levels.[3] Kretchmar also sought an award of punitive damages from Russell in his individual capacity.

DOC filed preliminary objections in the nature of a demurrer alleging that Commonwealth agencies are not persons subject to a civil rights action under 42 U.S.C. §1983 and that Kretchmar had not identified any protected liberty or property interest necessary for a procedural due process claim. Kretchmar filed a response alleging that his amended complaint was not brought under 42 U.S.C. §1983 and that he identified a protected liberty interest in the nature of an improper conversion of an out-of-state misconduct charge into a DOC misconduct.

By order dated May 21, 2014, the trial court sustained DOC's preliminary objections and dismissed Kretchmar's amended complaint. Kretchmar filed a notice of appeal to our Superior Court. By order dated July 1, 2014, the trial court directed Kretchmar to file a concise statement of matters complained of on appeal in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (1925(b) statement).[4] In his 1925(b) statement, Kretchmar referenced a constitutional right to appeal from the trial court's order and stated that he would have no knowledge of the basis for that order until an opinion was issued.

In a subsequent opinion dated January 16, 2015, the trial court explained that Kretchmar's due process claims against DOC must fail because he has not alleged a violation of a protected liberty interest. The trial court cited section 93.11(a) of DOC's regulations, which states that "[a]n inmate does not have a right to

---

[3] Although not raised, we note that Kretchmar's request for injunctive relief may be moot as more than three years have passed since the recording of his DOC misconduct charge.

[4] Rule 1925(b) now requires a "statement of errors complained of on appeal."

4

be housed in a particular facility or in a particular area within a facility." 37 Pa. Code §93.11(a). The trial court also noted that an inmate does not have a protected liberty interest in his assignment to a particular custody level or security classification.[5] *Lopez v. Pennsylvania Department of Corrections*, 119 A.3d 1081, 1085 (Pa. Cmwlth. 2015); *Mays v. Kosinski*, 86 A.3d 945, 949 (Pa. Cmwlth. 2014); *Clark v. Beard*, 918 A.2d 155, 160-61 (Pa. Cmwlth. 2007). Additionally, the trial court noted that Kretchmar had been afforded due process through DOC's inmate grievance procedure.

Further, the trial court stated that Kretchmar's claim was premised on a faulty supposition that had his misconduct been properly classified under DOC's system, he was not subject to loss of his "A Code" housing status. The trial court explained that eligibility for this "A Code" housing status requires that an inmate have no misconducts for a period of three years. Finally, with respect to Kretchmar's claims against Russell, the trial court noted that 42 U.S.C. §1983 does not provide for a claim against Russell while acting in his official capacity and that Pennsylvania law does not recognize a claim for money damages for a constitutional violation.[6]

---

[5] The trial court cited our unpublished opinion in *Stockton v. Lewis* (Pa. Cmwlth. No. 556 M.D. 2013, filed July 1, 2014) for support. In *Stockton*, we rejected an inmate's claims of constitutional violations relating to his placement in a restricted housing unit both prior to and after an investigation and finding of guilt relating to a misconduct charge. In so doing, we relied on section 93.11(a) of the DOC's regulations and DOC's Inmate Discipline Policy, DC-ADM 801, which includes a statement that the policy "does not create rights in any person. . . ."

[6] We note that Kretchmar's amended complaint only named Russell as a defendant in his individual, not official, capacity.

On appeal to this Court,[7] Kretchmar argues that the trial court erred in concluding that he failed to sufficiently allege a violation of a protected liberty interest under either the United States or Pennsylvania Constitutions or a cause of action against Russell under 42 U.S.C. §1983. We disagree.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. . . ." U.S. CONST. amend. XIV, §1. Similarly, the Pennsylvania Constitution provides that all people "have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty," PA. CONST. art. 1, §1, and that every person injured "shall have remedy by due course of law," PA. CONST. art. 1, §11. This Court has previously held that the due process requirements of the Pennsylvania Constitution are indistinguishable from the Fourteenth Amendment and, therefore, the same analysis applies to both provisions. *See Caba v. Weaknecht*, 64 A.3d 39, 45 (Pa. Cmwlth), *appeal denied*, 77 A.3d 1261 (Pa. 2013); *Turk v. Department of Transportation, Bureau of Driver Licensing*, 983 A.2d 805, 818 (Pa. Cmwlth. 2009).

A due process analysis is a two-staged process. *Keeley v. Commonwealth, State Real Estate Commission*, 501 A.2d 1155, 1157 (Pa. Cmwlth. 1985). "In order to determine whether a constitutional violation has occurred, a determination must initially be made that a protected liberty interest exists and, if so, what process is due." *Wilder v. Department of Corrections*, 673 A.2d 30, 32 (Pa.

---

[7] Our scope of review of a trial court's grant of preliminary objections is limited to determining whether that court committed an error of law or abused its discretion. *Miller v. Klink*, 871 A.2d 331, 334 (Pa. Cmwlth. 2005).

Cmwlth.), *appeal denied*, 681 A.2d 1344 (Pa. 1996). "Naturally, before one is entitled to procedural due process, one must possess an identifiable property right or liberty interest." *Keeley*, 501 A.2d at 1157 (citation omitted). Protected liberty interests may be created by either the Due Process Clause itself or by state law. *Wilder*. As our United States Supreme Court explained in *Sandin v. Conner*, 515 U.S. 472 (1995), where a liberty interest is not created by the Due Process Clause itself:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84. In *Sandin*, the inmate complained that his segregation in a special holding unit for a disciplinary misconduct that was later expunged violated his due process rights. The Court held that the inmate's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" because it did not exceed other types of segregated confinement and, due to the restrictions on prisoners outside of confinement at that prison, did not work a major disruption in his environment. *Id.* at 486.

In the present case, Kretchmar alleges that he has a liberty interest in protecting against erroneous disciplinary entries in his prison entries and a corresponding loss of preferred housing status.[8] However, it is well settled that an

---

[8] In his brief, Kretchmar criticizes the trial court for characterizing his suit as related to "A Code" housing status and an entitlement to a certain type of housing. However, Kretchmar **(Footnote continued on next page…)**

7

inmate does not have a right under any Pennsylvania law or regulation to be housed in a particular area within a facility or to a particular custody level. *Mays*, 86 A.3d at 949 (an inmate does not have a right under the United States Constitution or Pennsylvania law or regulations to any specific custody status). Indeed, "[i]t is entirely a matter of [DOC's] discretion where to house an inmate," *Clark*, 918 A.2d at 160, as such a decision "is at the core of prison administrators' expertise," *McKune v. Lile*, 536 U.S. 24, 39 (2002).

Further, under DOC's regulations, "an inmate does not have a right to be housed in a particular facility or in a particular area within a facility." 37 Pa. Code §37.11. "[J]udges may not indiscriminately denominate the place a prisoner is housed; statutes and regulations establish the presumptive place of confinement." *Clark*, 918 A.2d at 161. A change in the level of an inmate's security within a prison is not the type of deprivation of a liberty interest that provides a legitimate basis for an inmate lawsuit. *Sandin*. As this Court stated in *Dial v. Vaughn*, 733 A.2d 1 (Pa. Cmwlth. 1999):

> [C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and denials of privileges - matters which every prisoner can anticipate are contemplated by his original sentence to prison - are necessarily functions of prison management that must be left to the broad discretion of prison officials.

---

**(continued…)**

repeatedly referred to the loss of his housing status throughout his pleadings and his prayer for injunctive relief includes a specific request for reinstatement of his DOC custody and program levels.

8

*Id.* at 6 (citation and quotations omitted).[9]

Accordingly, because Kretchmar has no liberty interest in where he was confined or to a specific custody status, due process is not implicated and the trial court properly concluded that Kretchmar failed to establish an infringement of his due process rights.

We next turn to Kretchmar's purported cause of action against Russell under section 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. Section 1983 provides a civil remedy for deprivations of federally protected rights caused by persons acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). In any section 1983 action, the initial inquiry must focus on the presence of two essential elements: whether the conduct complained of was committed by a person acting under color of state law; and whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Id.*

Kretchmar's section 1983 action was premised exclusively on Russell's purported violation of the due process guarantees of the Fourteenth Amendment to the United States Constitution. However, we determined above that neither DOC's nor Russell's action in this matter infringe upon a liberty interest triggering

---

[9] Administrative segregation and denials of privileges are only imposed for valid disciplinary reasons.

9

Kretchmar's due process rights under the United States or Pennsylvania Constitutions. Thus, Kretchmar's cause of action under section 1983 also must fail.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary L. Kretchmar,              :
           Appellant         :
                                  :    No. 405 C.D. 2015
           v.                  :
                                  :
Pennsylvania Department of     :
Corrections and Douglas Russell   :

## ***ORDER***

AND NOW, this 16th day of November, 2015, the order of the Court of Common Pleas of Montgomery County, dated May 21, 2014, is hereby affirmed.

_____

PATRICIA A. McCULLOUGH, Judge