John Anthony GRUFF, Petitioner

v.

**DEPARTMENT OF STATE, Respondent**

John Anthony Gruff, Petitioner

v.

Department of State, Respondent

John Anthony Gruff, Petitioner

v.

Department of State, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 1, 2006.

Decided Dec. 29, 2006.

John Anthony Gruff, pro se, for himself.

Martha H. Brown, Asst. Counsel, Harrisburg, for respondent.

## OPINION

PER CURIAM.

John Anthony Gruff (Gruff) petitions, *pro se*, nunc pro tunc for review of three decisions of the Department of State (Department), Secretary of the Commonwealth (Secretary) dated November 9, 2005, which found in all three decisions that Gruff's financing statements were fraudulently filed, in that no rational basis existed under 13 Pa.C.S. § 9509 of the Uniform Commercial Code (UCC) which would entitle him to file the financing statements.[1] The cases were consolidated on March 16, 2006. We affirm the decisions of the Secretary.

On June 22, 2005, the Honorable C. Joseph Rehkamp, President Judge of the Court of Common Pleas of Perry County (Judge Rehkamp) petitioned the Secretary for expungement of improvidently recorded security interest. On July 6, 2005, Jeffrey A. Beard, Ph.D., Secretary of Corrections (Secretary Beard) petitioned the Secretary for expungement of improvidently recorded security interest. On

---

1. Pursuant to 13 Pa.C.S. § 9509, a person is entitled to file a record in accordance with the following:

   (a) Person entitled to file record.—A person may file an initial financing statement ... only if:

   (1) the debtor authorizes the filing in an authenticated record or pursuant to subsection (b) or (c); or
   (2) the person holds an agricultural lien which has become effective at the time of filing and the financing statement covers only collateral in which the person holds an agricultural lien.

July 8, 2005, Harry Wilson, Superintendent of the State Correctional Institution at Fayette (Superintendent Wilson) petitioned the Secretary for expungement of improvidently recorded security interest. (Collectively, Respondents)

Respondents sought to have a correction statement filed pursuant to the UCC, 13 Pa.C.S. § 9518, in order to render ineffective the three financing statements filed by Gruff naming each of them as a debtor.[2] Respondents alleged that Gruff filed a fraudulent security interest against them and listed as collateral "[a]ll of debtor's assets, land, and personal property, and all of debtor's interest in said assets, land, and personal property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located, described fully in security agreement" entitled "NOTICE BY WRITTEN COMMUNICATION/ security agreement" dated the *"Fifteenth* Day of the *Second* Month in the Year of our Lord *Two Thousand Five* By and between debtor and secured party...." Certified Record, Judge Rehkamp's Petition for Expungement of Improvidently Recorded Security Interest, Exhibit A1 at 1.

Judge Rehkamp alleged that his only association with Gruff was due to his presiding over Gruff's criminal proceedings in the Perry County Court of Common Pleas (trial court) when Gruff was convicted of aggravated assault, terroristic threats and recklessly endangering another person. Secretary Beard alleged that his only association with Gruff was due to Gruff's present incarceration at SCI–Fayette, one of twenty-seven state correctional institutions under Secretary Beard's control. Superintendent Wilson alleged that his only association with Gruff was due to Gruff's present incarceration at SCI–Fayette, where Wilson is the superintendent.

### Judge Rehkamp No. 62 C.D.2006

On June 22, 2005, along with the petition for expungement, Judge Rehkamp filed a initial financing statement indexed there....

* * *

(iv) A person adversely affected by a determination of the department under paragraph (i) may appeal the determination in accordance with 2 Pa.C.S. § 702 (relating to appeals).

(v) If the department determines that the initial financing statement was fraudulently filed and the determination is appealed to Commonwealth Court, the department shall file a correction statement with respect to the initial financing statement indexed there only upon affirmation by the court of its determination....

* * *

(vi) If the department files a correction statement with respect to the initial financing statement indexed there under this subsection, it shall refer the matter for criminal prosecution to the Office of Attorney General pursuant to 18 Pa.C.S. § 4911 (relating to tampering with public records or information).

---

**2.** 13 Pa.C.S. § 9518 relates to inaccurate or wrongfully filed claims and provides in pertinent part as follows:

(d) Fraudulent financing statements.—

(1) The Department of State may conduct an administrative hearing to determine if an initial financing statement was fraudulently filed in accordance with the following:

(i) The hearing shall be conducted in accordance with 2 Pa.C.S. (relating to Administrative Law and Procedure). The department shall determine the initial financing statement to be fraudulently filed for purposes of this subsection if it determines that no rational basis exists under section 9509 (relating to persons entitled to file a record) entitling the person to file the initial financing statement and it appears that the person filed the initial financing statement with intent to annoy, harass or harm the debtor.

(ii) If the department determines that the initial financing statement was fraudulently filed and no timely appeal of the determination was filed, the department shall file a correction statement with respect to the

motion to request a decision on the papers or for an expedited hearing. The petition and motion both indicate that on June 16, 2005, Judge Rehkamp served Gruff via first class mail, postage pre-paid at the address which was indicated in the financing statement, 245 Spruce Street, Middletown, Pennsylvania. On June 22, 2005, Judge Rehkamp also served Gruff a copy of the petition with a notice to plead via certified mail, return receipt requested at his actual address at SCI–Fayette. The notice to plead informed Gruff that he had 15 days to respond to the petition and to request a hearing.

On August 17, 2005, Gruff wrote to counsel for the Department, acknowledging receipt of the petition and asking whether a lawyer would be available to represent him in the proceedings. On August 23, 2005, the Department advised Gruff of his option of filing an answer, requesting a hearing and retaining counsel. The Department further advised Gruff that the sole issue in the case was whether the financing statement filed against Judge Rehkamp was valid and effective.

On September 2, 2005, the Department received an answer in the form of "Rebuttal" to the petition from Gruff. In the answer Gruff acknowledged receipt of the expungement petition and stated that he had filed an earlier "Rebuttal" to Judge Rehkamp's petition but that the Department of Corrections (DOC) tampered with his mail.

Gruff argued in his answer that he had copyrighted his name and that any use of his name "contractually binds the user, and then the user consents [and] agrees to the filing of a financing statement for unauthorized use of copyrighted property." Gruff Rebuttal, August 31, 2005, at 1. Gruff further argued that he was authorized to file a financing statement under 13 Pa.C.S. § 9509(b) and that Judge Rehkamp contractually bound himself by using Gruff's name and by failing to respond to Gruff's "written communication/security agreement." Gruff Rebuttal at 2. Gruff requested an expedited hearing and judgment against Judge Rehkamp in the amount of $803,000,000.00.

Gruff also filed letters dated August 29, 30, and 31 of 2005. The letters alleged that Gruff's UCC paperwork was in order, that everything he had done was legal and not fraudulent, that his copyright was valid, and that his mail was being tampered with. Gruff further requested transportation to a hearing from SCI–Fayette.

On September 16, 2005, Judge Rehkamp filed amendments to his petition for expungement, adding as exhibits two letters from Gruff that were dated August 8, and August 12, 2005, respectfully. On September 22, 2005, Judge Rehkamp filed another amendment to his petition for expungement, adding as an exhibit, a letter from Gruff dated September 20, 2005. On September 28, 2005, Gruff responded to the amended petition.

### Secretary Beard No. 524 C.D.2006

On June 24, 2005, Secretary Beard served Gruff with a petition for expungement via first class mail, postage pre-paid at the address listed in the financing statement and at his actual address at SCI–Fayette. On July 7, 2005, a copy of the petition and a notice to plead were served upon Gruff via certified mail, return receipt requested at SCI–Fayette.

On July 29, 2005, Gruff responded to the petition, setting forth his defense in support of the financing statement in lieu of a hearing. Gruff stated that he would like to request a hearing but would not be able to attend the hearing unless the Department was responsible for his transportation or a videoconference could be ar-

ranged. In an August 17, 2005 letter to the Department, Gruff acknowledged receipt of the petition and asked whether counsel could be appointed to represent him. On August 23, 2005, the Department advised Gruff of his option of filing an answer, requesting a hearing and retaining counsel. The Department further advised Gruff that the sole issue in the case was whether the financing statement filed against Secretary Beard was valid and effective.

On August 30 and September 14, 2005, Gruff filed letters in which he requested transportation to a hearing and alleged that the DOC was seizing all UCC paperwork and tampering with his mail. Gruff alleged that he was owed $232,000,000.00 for the use of his name by the DOC staff.

On August 23, 2005, Secretary Beard moved for judgment on the pleadings or an expedited hearing. Gruff was served via first class mail, postage prepaid, at SCI–Fayette. Gruff did not respond to this motion.

*Superintendent Wilson No. 525 C.D.2006*

On July 7, 2005, Superintendent Wilson served Gruff a petition for expungement via first class mail, postage pre-paid, at the address listed in the financing statement and at his actual address at SCI–Fayette. On July 18, 2005, a copy of the petition and a notice to plead were served upon Gruff via certified mail, return receipt requested at his actual address at SCI–Fayette. On July 25, 2005, Gruff filed an answer/rebuttal to the petition arguing that he held a legitimate copyright, that his security agreement was a valid contract and that Superintendent Wilson had violated his copyright by using his name.

Gruff did not request a hearing in this matter. Thereafter, Gruff filed an entry of appearance on September 14, 2005, which stated that he had not received a petition concerning Superintendent Wilson. On August 23, 2005, Superintendent Wilson filed a motion for judgment on the pleadings or for an expedited hearing, which was served on Gruff via first class mail, postage prepaid. Gruff did not reply to the motion.

On November 9, 2005, the Secretary issued an adjudication and order in each of the three cases. The Secretary found that there were no issues of material fact to be determined at a hearing on the petitions and that the findings hinged solely on legal arguments as presented. The Secretary further found that there was no security agreement between Gruff and the Respondents, nor was there an agricultural lien entitling Gruff to file financing statements against them. The Secretary concluded that Gruff's financing statements were fraudulently filed, in that no rational basis existed under 13 Pa.C.S. § 9509 of the UCC which would entitle him to file the financing statements. The Secretary further stated that Gruff filed the financing statements with the intent of annoying, harassing or harming the Respondents. Thus, the Secretary ordered the Department to file a correction statement in conformity with the UCC at 13 Pa.C.S. § 9518(d)(1), and refer the matter to the Office of the Attorney General for criminal prosecution.

On December 7, 2005, Gruff filed a brief on exceptions in each case. On December 13, 2005, the Secretary issued an order in each case stating that Gruff was not entitled to file exceptions to the adjudications of an agency head. On January 10, 2006, Gruff petitioned our Court for review nunc pro tunc. On February 7, 2006, our Court granted Gruff permission to proceed nunc pro tunc. On March 13, 2006, Gruff filed another petition for review before our Court. On March 16, 2006, our Court consolidated the cases and ordered that

the matters be treated as petitions for review addressed to this Court's appellate jurisdiction.[3]

Before our Court, Gruff contends that as a secured party he is entitled to seek reimbursement for copyright infringement by filing a financing statement, that his copyright is viable and legal, that the security agreement he sent to Respondents is a legal contract that binds debtors without their signature, that he is permitted to file a financing statement against anyone as it is a commercial document and has nothing to do with the judiciary, that he is not committing extortion, that the Respondents claiming a defense to the filing of the financing statement is illegal, that the filing of objections to the financing statement is unlawful, and that the Respondents cannot show or state a claim of superiority to use Gruff's name as they wish. Gruff asks for a hearing under 2 Pa.C.S. §§ 504 and 505.[4]

Gruff alleges a common law copyright in his name and that Respondents have consented to a contract that provides for payment of $500,000.00 for each unauthorized use of his name. The alleged security agreement entered into by Respondents is entitled "Notice By Written Communication/Security Agreement." Gruff alleges that he mailed this agreement to each of the Respondents and claims that their failure to reply or object to the agreement's terms constituted an acceptance of those terms.[5]

Respondents allege that they, as debtors, did not authorize the filing of the initial financing statement. Pursuant to 13 Pa.C.S. § 9509, a person is entitled to file an initial financing statement only if "the debtor authorizes the filing in an authenticated record...." *See supra* note 1. The authorization provision requires a signed or executed security agreement between the debtor and the person filing the financing statement.[6]

In accordance with 13 Pa.C.S. § 9102, a security agreement is defined as "an agreement which creates or provides for a security interest." A security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." 13 Pa.C.S. § 1201. To authenticate the agreement, the Respondents needed to "sign" it or to "execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept the record." 13 Pa.C.S. § 9102.

---

**3.** Our review is limited to a determination of whether constitutional rights were violated, errors of law committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

**4.** Section 504 of the Administrative Agency Law provides in pertinent part as follows:
No adjudication of a Commonwealth Agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.
2 Pa.C.S. § 504. Section 505 further provides that:

Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted.
2 Pa.C.S. § 505.

**5.** The agreement provides for the filing of a UCC financing statement naming Gruff as the secured party and holding a security interest in all the Respondents' property.

**6.** Gruff does not argue that he holds an agricultural lien or that he acquired collateral as authorization. Thus, these issues are not before our Court and will not be addressed.

■ In the present controversy, the Respondents did not sign the agreement. Thus, there was no underlying security agreement. Gruff's contention that Respondents accepted the agreement by merely receiving it, is in error. The Secretary was correct in finding that Gruff's financing statements were fraudulent.

■ Gruff further alleges that he was denied due process, in that he was not permitted to attend a hearing on this matter. Due process requires a person be given notice and an opportunity to be heard. 2 Pa.C.S. § 504. However, a hearing is not required in every case in order to be provided "an opportunity to be heard." Our Court has previously held that:

> [W]here no factual issues are in dispute, no evidentiary hearing is required under 2 Pa.C.S. § 504 ... [and][w]here there are no disputed facts, the motion proceedings, including briefs and arguments by both parties, provide ample opportunity for the parties to be heard and the

Administrative Agency Law requires no more. (Citations omitted).

*Independence Blue Cross v. Pennsylvania Insurance Department,* 802 A.2d 715, 720 (Pa.Cmwlth.2002).

In the present controversy, there were no factual issues in dispute. Therefore, an evidentiary hearing was not required. As no hearing was required, Gruff was not denied due process and the Secretary did not err.

Accordingly, we affirm the decisions of the Secretary.

## ORDER

AND NOW, this 29th day of December, 2006 the orders of the Department of State, Secretary of the Commonwealth in the above-captioned matters are affirmed.