**Richard A. MINFORD, Petitioner**

v.

**DEPARTMENT OF STATE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 23, 2007.

Decided April 5, 2007.

Publication Ordered July 2, 2007.

Richard Alfred Minford, petitioner, pro se.

Martha H. Brown, Asst. Counsel, Harrisburg, for respondent.

## PER CURIAM.

Richard A. Minford (Minford) petitions for review from the order of the Secretary of the Commonwealth, Pedro A. Cortes (Secretary), who determined that the initial financing statement (Financing Statement) Minford filed, involving Mutual Inspection Bureau, Inc. (Mutual), was "fraudulently filed" and ordered the Department of State (Department) to file a correction statement (Correction Statement)[1] and refer the matter to the Pennsylvania Office of the Attorney General for criminal prosecution.

Minford owned and resided at property located at 585 Lenape Road, Bechtelsville, Pennsylvania (Property). In 2003, Harleysville Mutual Insurance Co. (Harleysville) requested that Mutual perform an inspection of the Property. Mutual does inspections for insurance companies of properties that the insurance companies insure. Mutual arranges with independent contractors to perform inspections and to write inspection reports and evaluations.

---

1. Section 9518(d)(1)(ii) of the Uniform Commercial Code, Division 9, Secured Transactions (Act), 13 Pa.C.S. § 9518(d)(1)(ii), provides:

> The Department of State may conduct an administrative hearing to determine if an initial *financing statement* was *fraudulently filed* in accordance with the following:
> ....
> (ii) If the department determines that the initial *financing statement* was *fraudulently filed* and no timely appeal of the determination was filed, the department shall file a *correction statement* with respect to the initial *financing statement* indexed there. In addition to complying with the requirements of subsection (b), the *correction statement* filed by the department under this paragraph shall state all of the following:
> (A) the *correction statement* was filed by the department under this subsection;
> (B) the department has determined that the initial *financing statement* was *fraudulently filed* and that the person had the right to appeal the decision to a court of competent jurisdiction;
> (C) the initial *financing statement* found to be *fraudulently filed* may be ineffective; and
> (D) the reasons why the department found the initial *financing statement* to have been *fraudulently filed*. (emphasis added).

Mutual arranged to have an inspection of the Property performed. After the inspection, Minford received a letter from Harleysville which indicated that it would not insure the Property.

Minford sent Mutual a letter dated May 17, 2004, and an invoice dated March 25, 2004, in the total amount of $12,000,000.00.[2] In the May 17, 2004, letter, Minford stated:

> However, Harleysville Insurance has produced a three (3) page report which indicates an invasion (inspection) has indeed been completed by Mutual Inspection Bureau, Inc. (Inspector 068) on 1–23–03, which is accompanied by eight (8) photographs taken of various locations and areas, of and on private property and personal belongings.
>
> This unauthorized invasion and trespass must be taken most seriously, however, it could have been avoided had you extended the courtesy of communicating with the owner prior to your acts, and again, if you had respected the multiple and various **NOTICES** of '**NO TRESPASSING**' *private property*, and '**KEEP OUT**' sinage [sic] clearly posted for your protection.
>
> You chose however to disrespect and ignore the Laws and protections claimed by the resident and property owner. You are therefore held accountable for at least one (1) count of simple trespass, and a minimum of three (3) counts of

defiant trespass with knowledge and intent.

> Additionally, the reports made and photographs taken violate the claimed copyright protections of the living owner and establish unauthorized use of protected information for profit or gains without written authorization. (Emphasis in original).

Letter from Richard A Minford, May 17, 2004, at 1–2. Minford sent a subsequent letter on August 12, 2004, which indicated that the invoice was past due and demanded payment. Minford sued Mutual in the United States District Court for the Eastern District of Pennsylvania. The suit was dismissed pursuant to Mutual's motion. He also sued Harleysville in federal court. That suit was also dismissed.

On October 31, 2005, Minford filed the Financing Statement with the Department which listed Mutual as a debtor and stated, "[t]his lien is intended to cover ALL assets, collateral, accounts receivable, buildings and property both tangible and intangible, contracts and other income sources, owned or controled [sic] by the debtor, it's [sic] Officers, employees, principals, and agents, in their official, professional, and private capacities, until satisfaction of undisputed debt amount of $12,000,000.00 is paid." UCC Financing Statement, October 31, 2005, at 1. Minford included a document titled "Truth Affidavit in the Nature of Supplemental Rules for Admin-

---

2. The following items were listed on the invoice:

> *Item 1.* Cost for three (3) counts of unauthorized trespass and entry upon the privacy and property located at 585 Lenape Road, the cost of which is $1,000,000.00 ea.
> TOTAL COST OF ITEM # 1 IS + [sic] $3,000,000.00
> *Item 2.* Cost for communications or reports, either verbal or in writting [sic], containing or conveying intricate or private matters protected by law.

> TOTAL COST OF ITEM # 2 IS = $1,000,000.00
> *Item 3.* Cost for eight (8) unauthorized photographs taken for economic or financial gains or intent the cost of which is $ 1,000,000.00 ea.
> TOTAL COST OF ITEM # 3 IS + [sic] $8,000,000.00

---

**TOTAL AMOUNT OF INVOICE DUE AND PAYABLE = $12,000,000.00**

istrative and Maritime Claims Rules C(6) (Truth Affidavit)[3] which asserted:

> 11. FACT: Mutual Inspection Bureau, Inc. being fully informed of the loss of rights they may have had by failing to respond within the ten (10) days, have voluntarily chosen by their actions to waive those rights.
>
> 12. FACT: Mutual Inspection Bureau, Inc. being fully informed of my intent to pursue legal remedy for collection of this outstanding debt, have consented and chosen by their actions to accept this solution without controversy.
>
> 13. FACT: Mutual Inspection Bureau, Inc., et. al. [sic] is not estopped from asserting any rights which have been precluded by their acts, conduct, or silence when it was their duty to speak pursuant to the doctrine of estopple [sic].

Truth Affidavit in the Nature of Supplemental Rules for Administrative and Maritime Claims Rules C(6), Paragraphs 11–13 at 2; Reproduced Record at R–3a.

On May 24, 2006, Mutual petitioned the Secretary and requested that the Department file a Correction Statement because no rational basis existed for the Financing Statement under Section 9509(a) of the Act, 13 Pa.C.S. § 9509(a).[4]

The Hearing Examiner for the Secretary heard the matter on July 6, 2006.

Minford appeared at the hearing and stated that he was "not a party to any of the administrative practices or procedures. I do not fall in that category. You are dealing with created fictions. I am a real person. This proceeding cannot address the issues." Notes of Testimony, July 6, 2006, (N.T.) at 6–7. Minford objected to the proceeding. N.T. at 8. Minford submitted a "Denial of Corporation Existence" which stated that he, Mutual, the Department, and the Commonwealth of Pennsylvania among other entities did not exist as corporations. He further explained his position:

> I am a real person. I am not an incorporated entity. I'm not a creation of the State. I am not a fiction. I understand the State's family and the State's created fictions. They are incorporations.
>
> . . . .
>
> I do not fall within the guidelines of your fictional family. Like I stated before, the Affidavit and the failure of response to the 10 day notice that was given was given [sic] with ample opportunity to do anything or dispute any matter that they had at the time of the dispute. It was totally ignored.
>
> Now, if I fail to respond or if I have failed to appear at a hearing or I remain silent when I have a duty to speak, an agreement will be made that I had nothing to say or the assumption will be

---

**3.** Along with the Financing Statement, Minford filed a "Truth Affidavit in the Nature of Supplemental Rules for Administrative and Maritime Claims Rules C(6)" which listed eighteen "facts" regarding his dealings with Mutual and which stated that Mutual was estopped from asserting any rights in its defense because Mutual had not responded to the invoices.

**4.** Section 9509(a) of the Act, 13 Pa.C.S. § 9509(a), provides:

(a) **Person entitled to file a record.**—A person may file an initial financing statement, amendment which adds collateral covered by a financing statement or amendment which adds a debtor to a financing statement only if:

(1) the debtor authorizes the filing in an authenticated record or pursuant to subsection (b) or (c); or

(2) the person holds an agricultural lien which has become effective at the time of the filing and the financing statement covers only collateral in which the person holds an agricultural lien.

made. The same applies the other way. We can't have double standards of law. N.T. at 19–20.

Mutual called Minford to testify on cross-examination. Minford testified that he was not aware that Harleysville took over the policies of Penn Mutual Insurance Company, his prior insurer. N.T. at 24. Minford was concerned because there was a trespass on the Property and photographs were taken of the Property. N.T. at 25–26. Minford explained that he calculated that he was owed $12,000,000.00 based on the copyright and trade right protection "that I have exhibited publically [sic] for many, many years." N.T. at 30. Minford admitted that he did not have a security agreement with Mutual for any of its property. He also admitted that he did not have an agricultural lien against Mutual. N.T. at 49–50.[5]

Minford testified on his own behalf that he "did not grant jurisdiction. I did not enter jurisdiction. My filing of a financial statement was done as a matter of right, not approval, and not with permission." N.T. at 87–88. He asserted that Mutual, Mutual's counsel, the Department, and the hearing examiner were all fictitious entities. N.T. at 88. Minford asserted that because Mutual was paid for the inspection that there was an act of commerce for which Minford requested compensation. N.T. at 104–105. He argued that he billed Mutual for information it took from him:

> I have a right to keep people off my property and retain my privacy. I have a right to protect and defend that which is mine. I have the right against invasion. I have the right against theft, as most other people would. I put it in a commercial activity.

. . . .

> Certainly a burglar don't [sic] leave anything behind when he leaves the scene, not intentionally, anyhow. Nothing was left on my door. But yet that information was sold. Whoever took it, sold it to MIB [Mutual]. MIB [Mutual], in turn, sold it to someone else. And I have no idea where that information is being sold today. But it's out there and it's gone. And I billed them for that information. I think I done [sic] so justly.

N.T. at 106.

The Secretary determined that Mutual never agreed to the filing of the Statement, never entered into any sort of security agreement with Minford, and that Minford did not have an agricultural lien filed against any property owned by Mutual. Because there was no agreement and no agricultural lien, the Secretary found no basis existed for Minford to file the Financing Statement against Mutual. The Secretary also determined that Minford filed the Financing Statement to annoy, harass or harm Mutual. The Secretary ordered the Department to file a Correction Statement in conformity with Section 9518(d)(1) of the Act, 13 Pa.C.S. § 9518(d)(1) and to refer the matter to the Pennsylvania Office of the Attorney General for criminal prosecution pursuant to 13 Pa.C.S. § 9518(d)(1)(vi) and the Pennsylvania Crimes Code at 18 Pa.C.S. § 4911.

■ Minford contends that the Secretary erred when he determined that he had subject matter jurisdiction, when he determined there was personal jurisdiction, and when he failed to "apply neces-

---

**5.** Ginger Asper, Mutual's director of internal operations, explained the procedures by which Mutual arranges to have independent contractors conduct inspections of property at the request of insurance companies. John Hudock, Mutual's director of field operations, explained the procedures inspectors use when inspecting property.

sary sufficiency of evidence standards." Minford further contends that the Secretary was biased.[6]

■ Initially, Minford contends that the Secretary did not have subject matter jurisdiction because Section 1103 of the Act, 13 Pa.C.S. § 1103, provides: "Unless displaced by particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principle and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." Minford argues that his Truth Affidavit proved that the Secretary did not have "discretionary authority" over his filing of the Financing Statement. Minford argues that because there was no showing that the Secretary was vested with jurisdiction to act pursuant to Section 9509 of the Act, 13 Pa.C.S. § 9509, and because he refused to participate in a "deceptive scheme" the Secretary lacked jurisdiction.

■ Subject matter jurisdiction is conferred by the Constitution and laws of this Commonwealth. *Heath v. Workers' Compensation Appeal Board (Board of Probation and Parole)*, 580 Pa. 174, 860 A.2d 25 (2004). "[T]he test for determining whether a court has jurisdiction of the subject matter is competency of the court to determine controversies of the *general class* to which the case presented for its consideration belongs." *Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 309, 102 A.2d 170, 172 (1954) (emphasis in original). The key question is whether "the court had power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case." *Id.*

Although the Secretary is not a "court," the same rationale applies. Under 9518(d) of the Act, 13 Pa.C.S. § 9518(d), the "Department of State may conduct an administrative hearing to determine if an initial financing statement was fraudulently filed." Here, it is undisputed that Minford filed the Financing Statement with the Department. Mutual asserted that the Financing Statement was Fraudulently Filed. Clearly, the Secretary as head of the Department had authority to conduct a hearing to determine if the Financing Statement was indeed Fraudulently Filed. The Secretary had subject matter jurisdiction pursuant to the Act.

■ Next, Minford contends that the Secretary did not have personal jurisdiction over him because he did not consent, submit, and cooperate and he was not a corporation or other statutorily created entity.

■ Personal jurisdiction is generally acquired by service upon the person within the territorial limits of the court's authority. *Fraisar v. Gillis*, 892 A.2d 74 (Pa. Cmwlth.2006). Here, Mutual filed its petition and served Minford. Even if Minford returned all documents he received in connection with this controversy, it did not deprive the Secretary of jurisdiction. Minford cites no case law for the proposition that a person may decline to submit to the Department's or Secretary's authority simply because that person refuses to participate in a "deceptive scheme." This issue has no merit.

■ Minford next contends that the Secretary's decision was not supported by

---

6. This Court's review is limited to a determination of whether there was a violation of constitutional rights, an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. *Gruff v. Department of State,* 913 A.2d 1008 (Pa.Cmwlth.2006).

substantial evidence. Minford asserts that because Mutual did not respond to his Truth Affidavit that the statements contained in the affidavit must be accepted as true and Mutual is estopped from any challenge. Once again, Minford does not provide statutory, regulatory, or case law support for this proposition.

In order to file a Financing Statement under Section 9509(a) of the Act, 13 Pa. C.S. § 9509(a), a creditor must have the debtor's authorization or the creditor must hold an agricultural lien against the debtor. Minford admitted that Mutual never authorized the Financing Statement and that Minford did not have an agricultural lien against Mutual. The Secretary accepted Minford's testimony which supported the determination that the Financing Statement was Fraudulently Filed.

Finally, Minford contends that there was a conflict of interest because Mutual was statutorily created and the Secretary was part of the Commonwealth government.

To show impermissible bias, the interest of the adjudicator in the outcome of the controversy must be direct and substantial. *Subaru of America, Inc. v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 842 A.2d 1003 (Pa.Cmwlth.2004). Impermissible bias requires the party who asserts the bias to produce evidence particular to the adjudicator and particular to the controversy. A disqualifying bias is not simply inferred from the adjudicator's status, particularly where the status is statutorily required. *Pre–Need Family Services Eastern Region v. Bureau of Professional and Occupational Affairs*, 904 A.2d 996 (Pa.Cmwlth. 2006). Minford failed to produce evidence that the Secretary had a direct and substantial interest in the outcome.

Accordingly, this Court affirms.

## *ORDER*

AND NOW, this *5th* day of *April,* 2007, the order of the Department of State, Secretary of the Commonwealth in the above-captioned matter is affirmed.