**John Anthony GRUFF, Petitioner**

v.

**DEPARTMENT OF STATE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 17, 2007.

Decided Oct. 1, 2007.

Reconsideration Denied Nov. 27, 2007.

John A. Gruff, petitioner, pro se.

Martha H. Brown, Asst. Counsel and Albert H. Masland, Chief Counsel, Harrisburg, for respondent.

OPINION PER CURIAM.

John Anthony Gruff (Gruff), *pro se,* petitions for review of two adjudications and orders of Pedro A. Cortés, Secretary of the Commonwealth (Secretary), dated March 14, 2007 granting petitions filed on behalf of Charles F. Chenot, III, the District Attorney of Perry County (Chenot), and Brenda J. Albright (Albright), the Prothonotary and Clerk of Courts of Perry County, to expunge improvidently recorded security interests. The Secretary determined that there was no rational basis under Section 9509 of the Uniform Commercial Code (UCC), 13 Pa.C.S. § 9509 (relating to persons entitled to file a record), entitling Gruff to file an initial financing statement against Chenot or Albright and that they were filed fraudulently with intent to annoy, harass or harm them.

The Secretary ordered the Department of State (Department) to file correction statements in conformity with Section 9518(d)(1) of the UCC, 13 Pa.C.S. § 9518(d)(1) (relating to fraudulent financing statements). He also ordered the De-

partment to refer the matter to the Pennsylvania Office of Attorney General for criminal prosecution pursuant to Section 9518(d)(1)(vi) of the UCC and Section 4911 of the Crimes Code, 18 Pa.C.S. § 4911, relating to tampering with public records or information.

Chenot filed a petition for expungement of improvidently recorded security interest with the Department on December 6, 2005; Albright filed a similar petition on March 20, 2006.[1] Both sought to have correction statements filed in accordance with Section 9518(d)(1) of the UCC in order to render ineffective initial financing statements filed by Gruff naming Chenot and Albright as debtors and listing as collateral all of their real and personal assets. Chenot alleged that his only association with Gruff was when he prosecuted a criminal matter involving him in the Court of Common Pleas of the 41st Judicial District, Perry County Branch, in which Gruff was found guilty at a jury trial of aggravated assault, terroristic threats and recklessly endangering another person. Albright alleged that her only association with Gruff was in the context of performing her official duties in regard to the criminal matter. The Department conducted a telephonic hearing on October 16, 2006 before a Hearing Examiner because Gruff was incarcerated at SCI–Fayette. Chenot appeared on his own behalf and Albright appeared with representation; Gruff participated by telephone without representation.

At the hearing Chenot testified and offered documents in evidence to show that he prosecuted Gruff in a criminal case in 2005, that sometime in 2005 Gruff filed a UCC financing statement against Chenot stating that they had an agreement of which Chenot was in violation and that Chenot now owed Gruff $3,000,000. He stated that he never signed any documents in relation to Gruff, except possibly a letter related to the criminal case, and that his only contact apart from this matter was related to his position as prosecutor. Albright testified that she did not enter into any agreement or contract with Gruff, but he filed a claim against her for $3,000,000. She never had any contact with him apart from her duties relating to his criminal case. On cross-examination, Gruff testified that neither Chenot's signature nor Albright's appeared on the Notice by Written Communication/Security Agreement, but Gruff claimed a right un-

---

**1.** In Gruff's statement of questions involved he asserts that (a) due to the omission of a "Saving Schedule" for criminal prosecutions from Pennsylvania Constitutions in 1790 and 1968, there would be no issue of copyright infringement through judicial/official capacity; (b) Gruff's common law copyright of his name remains uncontested and wholly legal; (c) the legally binding contract "Notice by Written Communication/Security Agreement" dated February 15, 2005 was received and is completely legal; (d) no government official or anyone else is immune from a commercial agreement or copyright infringement; (e) as the secured party, he is entitled to mandate the UCC Bureau to seek a remedy for copyright infringement; and (f) that the debtors cannot show a registered claim of superiority to use Gruff's intellectual property as they wish. The Department counter-states the questions as (1) whether Gruff is entitled to file UCC financing statements against alleged debtors where they have not authorized the filings either in an authenticated record or by entering into a security agreement with Gruff and he filed the financing statements with intent to annoy, harass and harm them; (2) whether an enforceable common law copyright exists in Gruff's name, such that use of his name by county officials in criminal proceedings was a constitutionally impermissible taking of his intellectual property; and (3) whether a legally binding contract or security agreement was created between the parties based upon the alleged debtors' failure to object or respond to terms contained in Gruff's "Notice by Written Communication/Security Agreement" mailed to the alleged debtors.

der the terms of that document to make an agreement for them when they did not respond within twenty days. He admitted that Albright never signed any contract and that their only contact was through her role as Prothonotary and Clerk of Courts.

The Secretary found that on March 22, 2005 Gruff filed a security interest against Chenot through a UCC financing statement filed with the Department, naming Gruff as the secured party and Chenot as debtor and naming as collateral all of debtor's real and personal property, now and hereafter acquired, wherever located. Chenot dealt with Gruff solely in his prosecutorial capacity in the criminal prosecution and never entered into or intended to enter into a security agreement with Gruff. Gruff based his security interest upon a document dated February 15, 2005, which purports to be an agreement between Chenot and Gruff, indicating that Gruff copyrighted his own name in 1978, that he reserved all rights as to common-law copyright of trade-name/trademark JOHN ANTHONY GRUFF as well as any derivatives and variations and that Chenot was on notice that unauthorized use of Gruff's copyrighted name in any form was prohibited. Chenot's signature does not appear anywhere on the February 15, 2005 document, although Gruff typed Chenot's name in the space designated "Debtor's Signature." The Secretary made essentially identical findings regarding Albright and Gruff.

The Secretary concluded that the initial financing statements filed against Chenot and Albright by Gruff were fraudulently filed in that no rational basis existed under Section 9509 of the UCC entitling Gruff to file the initial statements. He determined that Gruff filed them with the intent to annoy, harass or harm Chenot and Albright. In his discussion the Secretary quoted Section 9518(d) of the UCC, relating to inaccurate or wrongfully filed claims, which provides for an administrative hearing to decide whether an initial financing statement was fraudulently filed and provides for remedies, including a correction statement.

The Secretary also quoted Section 9509 of the UCC, relating to persons entitled to file a record, which provides in part:

(a) **Person entitled to file record.**— A person may file an initial financing statement, amendment which adds collateral covered by a financing statement or amendment which adds a debtor to a financing statement only if:

(1) the debtor authorizes the filing in an authenticated record or pursuant to subsection (b) or (c); or

(2) the person holds an agricultural lien which has become effective at the time of filing and the financing statement covers only collateral in which the person holds an agricultural lien.

(b) **Security agreement as authorization.**—By authenticating or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement and an amendment covering:

(1) the collateral described in the security agreement; and

(2) property which becomes collateral under section 9315(a)(2) (relating to secured party's rights on disposition of collateral and in proceeds), whether or not the security agreement expressly covers proceeds.

The Secretary explained that under this provision, a person may file an initial financing statement if, and only if: (1) the debtor authorizes the filing, or (2) there is an agricultural lien. The authorization provision can be met only if there is a signed or executed security agreement be-

tween the debtor and the person filing the financing statement. By filing financing statements naming Chenot and Albright as debtors and listing as collateral all of their real and personal property, Gruff purported to have a security interest in their personal assets.

The Secretary noted that the idea that an individual could hold a common law copyright on his name such that officials in the justice system cannot address that person by name without incurring financial harm was patently absurd. Nevertheless, a review of federal copyright law was not necessary to the determination because Gruff satisfied neither requirement under Section 9509 of the UCC. Gruff made no allegation that Chenot or Albright authorized him to file the financing statements at issue, arguing instead that their failure to respond to the February 15, 2005 "Notice by Written Communication/Security Agreement" was an implicit agreement. The Secretary determined: "There is, therefore, no security agreement in existence between [Gruff] and [Chenot or Albright] whereby [Chenot or Albright] authorized the filing of a financing statement." Secretary's Adjudication and Order, p. 11. The Secretary determined that no rational basis existed under Section 9509 entitling Gruff to file an initial financing statement against Chenot or Albright and that the statements were fraudulently filed to annoy, harass or harm them. Accordingly, the Secretary directed the Department to file a correction statement in conformity with UCC

Section 9518(d)(1) and pursuant to Section 9518(d)(1)(iv) to refer the matter to the Pennsylvania Office of Attorney General for criminal prosecution under 18 Pa.C.S. § 4911.[2]

Gruff argues that his "common law copyright" is uncontested, that the "Notice by Written Communication/Security Agreement" dated February 15, 2005 was received and is completely legal, that no government officials are immune to an action for copyright infringement, that as a secured party he has a right to have the UCC Bureau seek a remedy for copyright infringement and that the debtors cannot show in the record a registered claim of a superior right to use his intellectual property.[3] Although Gruff cites or at least refers to a great number of cases in claimed support of his positions, he does not address the one case that the Court regards as determinative of the matter.

The Department points out that Gruff filed initial financing statements with the Department listing as alleged debtors the Honorable C. Joseph Rehkamp, President Judge of the Court of Common Pleas of the 41st Judicial District, Jeffrey A. Beard, Ph.D., Secretary of Corrections, and Harry Wilson, Superintendent of SCI–Fayette, all of whom had some involvement with Gruff's conviction and subsequent incarceration solely in their official capacities. This Court affirmed the Department's determination that the filings were fraudulent in *Gruff v. Department of State,* 913 A.2d 1008 (Pa.Cmwlth.2006), *appeal denied,* 592 Pa. 792, 927 A.2d 626 (2007). In

---

**2.** Appellate review of an agency adjudication is limited to determining whether there has been a constitutional violation or an error of law and whether the agency's factual findings are supported by substantial evidence. 2 Pa. C.S. § 704; *Insurance Fed. of Pennsylvania, Inc. v. Department of Insurance,* 585 Pa. 630, 889 A.2d 550 (2005).

**3.** Gruff also appears to argue that his criminal conviction was invalid because all Pennsylvania criminal statutes lack the necessary Constitutional foundation and therefore are invalid. That attempted collateral attack upon Gruff's criminal conviction is not a proper part of this administrative proceeding on Chenot and Albright's petitions to expunge.

that case, Gruff sent a "Notice by Written Communication/Security Agreement" dated February 15, 2005 to each of the three officials. Each filed a petition for expungement, and without holding a hearing the Secretary issued adjudications and orders after finding that there were no material issues of fact to be determined at a hearing, that there were no security agreements between Gruff and any of the officials or agricultural liens entitling Gruff to file the initial statements and that they therefore were fraudulently filed in that they lacked any rational basis under UCC Section 9509. Further, Gruff filed the statements with the intent to annoy, harass and harm the officials.

On Gruff's petition for review, the Court reviewed Gruff's numerous contentions, among other things, that as a secured party he is entitled to seek reimbursement for copyright infringement by filing a financing statement, that his copyright is viable and legal and that the security agreement he sent to the officials was a legal document that bound them without their signatures. The Court noted Gruff's claims of a common law copyright in his name and that failure of the officials to reply or to object to the Notice by Written Communication/Security Agreement constituted acceptance of its terms.

The Court summarized the officials' argument in *Gruff* that they did not authorize the filing of the initial financing statements, that Section 9509 of the UCC permits such a filing only if "the debtor authorizes the filing in an authenticated record," which requires a signed or executed security agreement, and that to "authenticate" the agreement, under the definition of that term in Section 9102 of the UCC, 13 Pa.C.S. § 9102, the officials needed to "sign" it or to "execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept the record." The officials did not sign the agreement, and the Court held that there was no underlying security agreement; Gruff's contention that the officials accepted the agreement by merely receiving it was in error, and the Secretary correctly determined that Gruff's financing statements were fraudulent.

As is readily apparent, the decision in *Gruff* is completely dispositive of the present matter. The underlying factual circumstances are not merely similar but identical to those considered and ruled upon in *Gruff,* and no basis has been presented for the Court to overrule its prior holding. The Secretary's finding that neither Chenot nor Albright signed a security agreement with Gruff or intended to be bound by any such agreement is fully supported in the record. Accordingly, the Court affirms the order of the Secretary granting the petitions for expungement filed by Chenot and Albright and ordering the filing of letters of correction and referral to the Office of Attorney General.

### *ORDER*

AND NOW, this 1st day of October, 2007, the orders of Pedro A. Cortés, Secretary of the Commonwealth, in the above-numbered cases are affirmed.