IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria Rodriguez,                            :
               Petitioner                :
                                         :
       v.                           :  No. 873 C.D. 2024
                                         :
Pennsylvania Housing                        :  Submitted: October 7, 2025
Finance Agency,                             :
               Respondent                :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MATTHEW S. WOLF, Judge

OPINION
BY JUDGE McCULLOUGH             FILED: November 19, 2025

       Maria Rodriguez (Petitioner) petitions for review of the Pennsylvania Housing Finance Agency's (Agency) June 6, 2024 Final Agency Decision (Decision) affirming the denial of her mortgage assistance request. On appeal, Petitioner argues the Agency erred in finding her ineligible to receive mortgage loan reinstatement assistance from the Pennsylvania Homeowner Assistance Fund program (PAHAF). She further argues that the Agency deprived her of due process by not providing her with a hearing pursuant to 2 Pa.C.S. § 504. After review, we affirm.

## I. Background

       The facts and procedural history of this case may be summarized as follows. Petitioner obtained a mortgage on her primary residence in March of 2005. The mortgage became delinquent on April 12, 2005. While her mortgage loan matured in 2012, her lender did not initiate foreclosure proceedings until 2021, when he sought payment of over $69,000 which was owed on the mortgage.

The PAHAF program is part of a federal program administered by the Agency which is designed to assist homeowners with, *inter alia*, mortgage loan reinstatement. Petitioner applied for PAHAF mortgage loan reinstatement assistance on April 25, 2023. (Supplemental Reproduced Record (S.R.R.) at 93.) Petitioner requested mortgage assistance for the property located at 110 E. Tioga, Philadelphia, Pennsylvania 19134 (the Property). (S.R.R. at 21, 138.) Petitioner's application stated that she was the owner-occupant of a primary residence securing the mortgage loan for which she was seeking assistance. In addition, Petitioner stated that she had experienced a qualified financial hardship after January 21, 2020 (including a hardship that began before January 21, 2020, and continued after that date). (S.R.R. at 21.) She also indicated that she was negotiating with the mortgagee for a loan modification which would extend the mortgage term for an additional 12 years. (S.R.R. at 2.)

On February 1, 2024, the PAHAF Committee denied Petitioner's application, stating:

> The [PAHAF] Program conducted a compliance review of [Petitioner's] application and identified the following irregularities: [] *COVID-related financial hardship* - The initial date of delinquency occurred in 2005, and the loan matured in 2012, making the note due and payable prior to the COVID-19 pandemic. Due to the nature of the discrepancy, [Petitioner's] application has been determined ineligible for PAHAF assistance.

(S.R.R. at 115) (emphasis added).

On March 4, 2024, Petitioner appealed the PAHAF Committee's denial of her request. Petitioner included in her appeal a loan modification agreement as supporting documentation and stated in her appeal that the loan modification was contingent on Petitioner obtaining a PAHAF award of $50,000. (S.R.R. at 109-12.)

2

On June 6, 2024, the Agency denied Petitioner's appeal. In its Decision, the Agency stated that to be eligible for mortgage reinstatement assistance and forward mortgage assistance, an applicant must have "experienced a financial hardship after January 21, 2020 (including a hardship that began before January 21, 2020 and continued after that date)." (S.R.R. at 2.) The Decision then stated:

> Based on a review of the mortgage securing the loan for which you are seeking assistance, the loan originated on March 12, 2005. The maturity date of your loan is December 12, 2012. The initial delinquency occurred on April 12, 2005.
>
> The purpose of [] PAHAF, is a housing related program funded by the U.S. Department of the Treasury to assist Pennsylvania homeowners facing *financial hardship due to the COVID-19 pandemic* that began after January 21, 2020. Because your application for mortgage reinstatement assistance and forward mortgage assistance was made on a loan which fell into default in April 2005*, which was 15 years prior to the COVID-19 Emergency* **(**sic**).** The original terms of the loan stipulated a maturity date of December 12, 2012. *Therefore, there were no monthly payments that came due during the COVID-19 Emergency.* And although [Petitioner] has a conditional loan modification, based on approval for PAHAF assistance, the delinquency occurred in April 2005 and the loan matured on December 12, 2012, *which were both prior to the Covid Emergency.* Consequently, your application for assistance was properly denied.

(S.R.R. at 1-3) (emphasis added).

## II. Issues

Petitioner raises two issues before this Court. The first is whether the Agency's Decision denying Petitioner's PAHAF mortgage reinstatement assistance, which she claims was made solely on the grounds that Petitioner's mortgage matured before 2020, was arbitrary and capricious. Petitioner asserts that no such limitation

3

was promulgated by the United States Department of the Treasury or the Agency's plan for COVID-19 funding that it submitted to the Treasury. (Petitioner's Br. at 9-12.) The second issue is whether the Agency denied Petitioner her constitutional right to due process by failing to provide her with a hearing. *Id.* at 12.

### III. Discussion[1]

*A. The PAHAF Mortgage Assistance Program*

PAHAF is a federally funded program established under the Coronavirus Economic Stabilization Act (Corona Virus Act). *See* 15 U.S.C. § 9058d. In Section 9058d(c)(1) of the Act, Congress declared:

**(c) Establishment of Fund**

**(1) Establishment; qualified expenses**

There is established in the [United States (U.S.)] Department of the Treasury [(Treasury)] a Homeowner Assistance Fund [(HAF)] ***to mitigate financial hardships associated with the coronavirus pandemic*** by providing such funds as are appropriate by subsection (a) to eligible entities for the purpose of preventing homeowner mortgage delinquencies, defaults, foreclosures, loss of utilities or home energy services, and displacements of homeowners ***experiencing financial hardship after January 21, 2020***, through qualified expenses related to mortgages and housing, which include—

**(B)** financial assistance to allow a homeowner to reinstate a mortgage or to pay other housing related costs related to a period of forbearance, delinquency, or default; . . . .

---

[1] "[This Court's] review is limited to whether constitutional rights were violated, an error of law [was] committed, or the findings of fact are not supported by substantial evidence." *Fish v. Pennsylvania Housing Finance Agency*, 931 A.2d 764, 767 n.3 (Pa. Cmwlth. 2007).

4

15 U.S.C. § 9058(c)(1)(B) (emphasis added). Section 102-F of The Fiscal Code[2] provides that the Agency shall administer the HAF in Pennsylvania. *See* 72 P.S. § 102-F.

Pursuant to the authority granted by the Pennsylvania General Assembly, the Agency drafted the PAHAF's Overarching Program Policy Manual (Program Policy). *See* S.R.R. at 158-202. The Program Policy is based on Treasury HAF Guidance, applicable federal regulations, and the PAHAF Plan. According to the Program Policy: "The Policies and Procedures for [PAHAF] are provided to assist program staff, subgrantees, associated partners, and venders in implementing and managing the [Treasury] [HAF]." (S.R.R. at 161.)

### B. Whether the Agency's Denial of Petitioner's PAHAF Mortgage Reinstatement Assistance was Arbitrary and Capricious

Petitioner argues that she is eligible for PAHAF assistance and that the Agency's denial of her application exceeded the Agency's authority for the disbursal of HAF funds under federal law and guidance. (Petitioner's Br. at 12.) Specifically, she argues that:

> [the Agency] expressly represented to [Treasury] that eligibility simply requires that "[h]omeowner must have experienced a Qualified Financial Hardship after January 21, 2020 (including a hardship that began before January 21, 2020 but continued after that date)."

> [The Agency] failed to properly disclose any limitation on the use of HAF funds for balloons/matured loans to the Department of the Treasury. In fact, [the Agency] informed the Department of the Treasury in its plan that it would offer both "financial assistance to allow a homeowner to reinstate a mortgage or to pay other

---

[2] Act of April 9, 1929, P.L. 343, *as amended*, added by Section 7 of the Act of June 30, 2021, P.L. 62, 72 P.S. § 102-F.

> housing-related costs related to a period of forbearance, delinquency or default" and "mortgage payment assistance." [] Petitioner's defaulted mortgage balance clearly falls under those categories because her lender was offering an extension of the mortgage payment term upon receipt of HAF funds.

*Id.* at 10 (emphasis in original).

Thus Petitioner asserts that the Agency denied her PAHAF application solely on the grounds that her mortgage matured before 2020. She contends that the Decision was arbitrary and capricious because no such limitation was promulgated by the U.S. Treasury or the Agency's plan for COVID-19 funding that it submitted to the Treasury. (Petitioner's Br. at 4.) In response, Respondent maintains that the reason the Agency denied Petitioner's application was because she did not provide information consistent with having experienced a financial hardship associated with the COVID-19 pandemic. (Respondents' Br. at 9-11.) Respondent argues that the Decision to deny Petitioner PAHAF assistance should be affirmed as a matter of law because Petitioner did not demonstrate that she had a qualified financial hardship. (Respondent's Br. at 8.)

Based on our review of the submissions of the parties and the evidence of record, we find that the Agency's denial of Petitioner's application was not arbitrary and capricious. We note that the Agency's initial denial of Petitioner's application stated that it had conducted a compliance review of Petitioner's application and identified an "irregularity" such that Petitioner had not established that she met one of the program's eligibility requirements. The Agency identified the irregularity as a lack of evidence that Petitioner had suffered a "COVID-related financial hardship." (S.R.R. at 115.)

The Agency stated that in order to be eligible for PAHAF assistance, an applicant must have "experienced a financial hardship after January 21, 2020

6

(including a hardship that began before January 21, 2020 and continued after that date)." (S.R.R. at 1-3.) It stated that "[t]he purpose of the . . . program . . . was to assist Pennsylvania homeowner's facing *financial hardship due to the COVID-19 pandemic . . . .*" *Id.* (emphasis added). It further stated that Petitioner's loan had been in default for 15 years when the COVID-19 Emergency occurred, and "there were no monthly payments that came due during the COVID-19 Emergency." *Id.* These statements, together with Petitioner's failure to provide specific information relating any "financial hardship due to the COVID-19 pandemic" make it clear that the Agency did not deny her application solely on the grounds that her mortgage matured before 2020.

The Program Policy provides that the purpose of the program is "[]to mitigate financial hardships *associated with the coronavirus pandemic* to prevent homeowner mortgage delinquencies, defaults, foreclosures, and displacements for eligible Pennsylvania homeowners." (S.R.R. at 161) (emphasis added). The Program Policy defines the term "Qualified Financial Hardship" as:

> a material reduction in income or a material increase in living expenses associated with the Covid-19 pandemic that has created or increased the risk of mortgage delinquency, mortgage default, foreclosure, loss of utilities or home energy services, or displacement for a homeowner.

(S.R.R. at 167.) This definition is virtually identical to the definition of the term "Financial hardship" found in the U.S. Treasury's Homeowner Assistance Fund Guidance at page 2. (June 12, 2023) (attached as Appendix B to Petitioner's Brief.)

When Petitioner applied for PAHAF assistance, both the prescreen acknowledgement and the application itself made clear that an applicant must provide proof that he or she has experienced a financial hardship associated with the COVID-19 pandemic in order to qualify for assistance. (S.R.R. at 70-71.) The

7

Program Overview portion of the application provided to Petitioner defines the phrase "COVID-19 Qualified Financial Hardship" as "a material reduction in income or material increase in living expenses *that created or increased a risk of mortgage delinquency, mortgage default or foreclosure that is associated with the coronavirus pandemic*." (S.R.R. at 54-55.) (emphasis added).

The prescreen acknowledgment states "[t]o qualify, the household must have experienced a financial hardship as a result of the COVID-19 pandemic after January 21, 2020 (including a hardship that began before January 21, 2020 but continued after that date). You will attest that this is *true and provide a description of the hardship*." (S.R.R. at 89) (emphasis added). In Petitioner's prescreen acknowledgment, in response to the question, "Did you or a member of your household experience a financial hardship . . . as a result of the COVID-19 pandemic after January 21, 2020 (including a hardship that began before January 21, 2020, but continued after that date)?" Petitioner simply stated "Yes" without providing the required description or explanation of her financial hardship. (S.R.R. at 87.)

In her application, Petitioner did indicate that due to the COVID-19 pandemic, her work hours were reduced. She also indicated that she lives with her two adult sons and has incurred higher living expenses as a result of COVID-19 but provided no further information. In addition, Petitioner provided her mortgage note, an Act 91 Notice, Mortgage Information, and Manual Debt Verification forms from her lender, Natasha A. Colon. (S.R.R. at 99-106, 151-57.) However, she did not indicate how *COVID-19* had contributed to her increased living expenses or explain specifically how the *pandemic* had "created or increased a risk of mortgage delinquency, mortgage default, foreclosure" as required by Program Policy and the U.S. Treasury Guidance. (S.R.R. at 167.) As the Agency noted, no monthly mortgage payments came due during the COVID-19 pandemic.

The documentation Petitioner provided indicated that her first payment on the mortgage note was due April 12, 2005, and the mortgage term ended on December 12, 2012. It also indicated that no payments were made on the mortgage from April 12, 2005, to December 2020. *Id.* Therefore, not only did she not connect her increased living expenses to the coronavirus pandemic, the information she submitted in her application made clear that those increased expenses did not create or increase her risk of delinquency, default, or foreclosure on a mortgage she had held for approximately 15 years before the start of the pandemic and on which she had never made a single payment.

As noted previously, the PAHAF Program Policy Manual defines "Qualified Financial Hardship" as "a material reduction in income or a material increase in living expenses ***associated with the Covid-19 pandemic*** that has created or increased the risk of mortgage delinquency, default, foreclosure, loss of utilities or home energy services or displacement for a homeowner." (S.R.R. at 167) (emphasis added). Therefore, we find that the Agency's Decision was not arbitrary and capricious because Petitioner failed to prove that she is eligible for assistance under PAHAF as set forth in the Program Policy because she has failed to explain or document how she has suffered a "Qualified Financial Hardship."

*C. Petitioner's Due Process Claim*

Petitioner argues that the Agency failed to provide her due process when it denied her application without providing her a hearing, as required by 2 Pa.C.S. § 504. She claims that after she filed her appeal of the initial denial of her request, "[the Agency] never followed up with her at all-not to request documentation, nor to alert her that she could provide any documentation at a hearing." (Petitioner's Br. at 8.) Therefore, she argues that the Agency's Decision should be reversed or, in the alternative, the case should be remanded to the Agency for further consideration and

9

the opportunity for a hearing, so that Petitioner may show that she has satisfied all necessary requirements to obtain a PAHAF award. *Id.* at 9.

The guarantee of due process, in Pennsylvania jurisprudence, emanates from a number of provisions of the Declaration of Rights, particularly article I, sections 1, 9, and 11 of the Pennsylvania Constitution, Pa. Const. art. I, §§ 1, 9, 11. *Lawson v. Pennsylvania Department of Public Welfare*, 744 A.2d 804, 806 (Pa. Cmwlth. 2000). The constitutional right to due process is fully applicable in proceedings before administrative tribunals. *Soja v. Pennsylvania State Police*, 455 A.2d 613, 615 (Pa. 1982); *Lawson*, 744 A.2d at 806. The fundamental requisites of due process are adequate notice and an opportunity to be heard. *Id.*; Section 504 of Administrative Agency Law, 2 Pa.C.S. § 504. Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, provides:

> No adjudication of a Commonwealth Agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings.

2 Pa.C.S. § 504. *See also Keystone Redevelopment Partners, LLC v. Pennsylvania Gaming Control Board*, 5 A.3d 448, 468 (Pa. Cmwlth. 2010) ("Due process requires a reasonable opportunity to meet and rebut evidence used by an administrative agency."). However, we have held that receiving an opportunity to be heard does not require a hearing in every case.

In *Independence Blue Cross v. Pennsylvania Insurance Department*, 802 A.2d 715 (Pa. Cmwlth. 2002), we stated:

> This [C]ourt has held that where no factual issues are in dispute, no evidentiary hearing is required under 2 Pa.C.S. § 504. Where there are no disputed facts, the motion proceedings, including briefs and arguments by both

10

> parties*, **provide ample opportunity for the parties to be heard** and the Administrative Agency Law requires no more.

*Id.* at 720 (citations omitted) (emphasis added); s*ee also United Healthcare Benefits Trust v. Insurance Commissioner of Pennsylvania*, 620 A.2d 81, 83 (Pa. Cmwlth. 1998) ("While 2 Pa.C.S. § 504 mandates that a party receive an opportunity to be heard, that opportunity does not require the equivalent of an evidentiary hearing. This court has held that where no factual issues are in dispute, no evidentiary hearing is required under 2 Pa.C.S. § 504.").

In this case, the evidence of record demonstrates that Petitioner was provided ample opportunity to be heard. When Petitioner applied for PAHAF assistance, she had an opportunity to demonstrate how she has experienced a financial hardship *as a result of the COVID-19 pandemic*. After she filed her application, the Agency sent her an email requesting additional information. In its August 16, 2023 email, a servicing specialist with PAHAF emailed Petitioner's counsel and requested that the Agency be sent a copy of the original mortgage note. The specialist also informed counsel that "we must know how the client will cover the overage above and beyond the potential $50,000 grant, as we don't give conditional grant approvals." (S.R.R. at 113.) On the same day, Petitioner's counsel forwarded the mortgage note to the Agency and asked the Agency if they could provide proof that his client was eligible for the full grant amount. In addition, he indicated that he had discussed Petitioner's case a month previously with another PAHAF case handler. *Id.*

On February 1, 2024, Petitioner received her initial Ineligibility Determination. (S.R.R. at 18.) Soon afterward, Petitioner's counsel filed her appeal. In connection with this appeal, Petitioner's counsel submitted additional documentation, including her Act 91 Notice and loan modification agreement. He

also submitted extensive argument on her behalf and exchanged multiple emails with PAHAF staff. (S.R.R. at 25-28, 116, 120-23.)

After providing Petitioner with multiple opportunities to present her version of the facts, the Agency determined that there were no outstanding issues of fact that warranted a hearing. Based on the information Petitioner provided, it was undisputed that she did not, by her own admissions, experience any COVID-related hardship which contributed to her mortgage delinquency or default. Accordingly, the Agency did not believe a hearing was necessary to resolve legal or factual issues raised by Petitioner. We discern no error.

In *Rothrock Motor Sales, Inc. v. Department of Labor & Industry, Office of Unemployment Compensation Tax Services* (Pa. Cmwlth., No. 1546 C.D. 2019, filed April 27, 2021),[3] this Court held that the Department of Labor and Industry did not err in denying Rothrock's appeal without an evidentiary hearing. There, the Tax Review Office concluded:

> There was no actual dispute as to the facts in this matter. [The Department's Office of Unemployment Compensation Tax Services (OUCTS)] indicates [Rothrock] did not file quarterly reports for fiscal year 2017 until February 2018 (OUCTS correspondence covering authenticated documentary copies dated June 20, 2018 [(R.R. at 54a-55a)]). [Rothrock] admits to such lateness in its wage reporting, as quoted in relevant part above. (Appeal to UC Tax Review Office, under May 8, 2018 postmark [(R.R. at 50a-51a)].)

*Id.* at 4.

Here, as in *Rothrock*, there is no factual dispute as to whether Petitioner has provided evidentiary proof demonstrating that she has experienced a Qualified Financial Hardship, as defined in the eligibility criteria of the PAHAF Program

---

[3] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

Policy. As in *Rothrock*, Petitioner was clearly on notice of the reason for the denial of her application as well as of her opportunity to supplement the record if she believed factual issues existed as to this issue. *See also Gruff v. Department of State*, 913 A.2d 1008 (Pa. Cmwlth. 2006) (holding that because a security agreement must be signed to be valid and there was no dispute as to the fact that the respondent did not sign the agreement, no evidentiary hearing was required under 2 Pa.C.S. § 504.

Moreover, Petitioner does not explain what additional information or evidence she would have presented at a hearing that would have made a difference in the outcome of this matter. Therefore, Petitioner's assertions in this due process claim are not grounded in any facts whatsoever. Thus, she is not entitled to relief.

Because there are no legally relevant factual issues in dispute and Petitioner and her counsel were provided ample opportunity to be heard, an evidentiary hearing was not required. As no hearing was required, Petitioner was not denied due process.

## IV. Conclusion

Based on our review, it is apparent that the Agency did not abuse its discretion, violate Petitioner's constitutional rights, or make findings of fact that were not supported by substantial evidence. Accordingly, the Agency's Decision is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria Rodriguez,
          Petitioner

      v.

Pennsylvania Housing
Finance Agency,
          Respondent

:
:
:
:
:   No. 873 C.D. 2024
:
:
:
:
:

## ***ORDER***

AND NOW, this 19th day of November, 2025, the Pennsylvania Housing Finance Agency's June 6, 2024 Final Agency Decision is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge